487 P.2d 692

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Robert Lee TISDEL and Greenberry Tackett, Defendants-Appellants.**

**No. 10674.**

Supreme Court of Idaho.

July 28, 1971.

McDermott & McDermott, Pocatello, for appellants.

W. Anthony Park, Atty. Gen., and Martin R. Ward, Deputy Atty. Gen., Boise, for respondent.

McFADDEN, Justice.

Robert Lee Tisdel and Greenberry Tackett, the defendants, were charged by information of the crime of first degree burglary, alleged to have been committed September 14, 1969, in Pocatello, Idaho. They were tried before a jury, found guilty, and

each sentenced to serve a term of not to exceed fifteen years in the penitentiary. They appeal from that judgment of conviction. We affirm.

On the morning of September 14, 1969, at about 6:00 a. m., Inkley's Photo Shop in Pocatello was burglarized and about $6,-000.00, in wholesale value, of camera equipment, tape recorders and various accessories were taken. The shop, managed by Norman Showalter, was on the first floor of the building, which also contained the Idaho Hotel on the second floor. Robert Knapp, the maintenance man for the hotel, had a room in the hotel overlooking the street by the photo shop. He was taking garbage cans down the stairs from the hotel shortly after 6:00 a. m., and observed a man standing on the sidewalk near a Dodge car with the trunk raised. The rear of the Dodge car was almost opposite the back door to Inkley's Photo Shop. After taking the second garbage can down, he looked out his window and observed the same man standing by the car, and also saw a second man come out wearing a pair of gloves and place a package in the car. This second man came out of the side door of the photo shop.

Knapp observed the license number on the car and wrote it down on a parking stub. Knapp later went out to have coffee and upon returning to the hotel between 7:00 and 7:25. a. m. observed that the car and the two men were gone. At about 8:00 a. m. he called the police. He explained the delay in calling the police by the fact that it just had dawned on him that people would not be working in the photo shop that day (September 14) as it was a Sunday.

Knapp testified that he recognized the man standing on the sidewalk, having seen him around Pocatello previously, and that he had known him for some time. He also stated that the other man (whom he had observed carrying and placing the package in the trunk of the car) was not familiar to him. Knapp identified both men during the course of the trial. Although he initially was confused as to their names, he

later got the names straightened out, defendant Tackett being the man who had been standing by the car, and defendant Tisdel being the man who carried the package.

The police officers came to the photo shop, looked around, but did not go in. Later Mr. Showalter came and the police officers found where the side door to the shop and an interior door had been forced open. Knapp gave the parking stub with the license numbers written on it to the police and this information was broadcast. About 10:00 a. m. the officers located the vehicle at the Pinecrest Motel where Tisdel had a room and four officers went to Tisdel's room. They found the two defendants there and a man by the name of Nelson. They immediately arrested Tisdel, searched the room, and took him to the sheriff's office. Tackett and Nelson were asked to and did accompany the officers to the sheriff's office.

Knapp identified Tackett as the man he had previously observed standing near the Dodge car, and thereupon Tackett was also arrested for the crime.

The officers obtained a search warrant from Judge Loveless, and then searched the car where they found the property stolen from the photo shop. The officers inventoried this property and it was checked off and identified by the manager of the store.

The defendants have assigned five errors, the first of which contends there was an illegal search and seizure of the property. Under this assignment they argue that the officers in the absence of a search warrant had no justification in searching the motel room beyond the area where Tisdel was arrested. The defendants' principal reliance is upon the case of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The record reflects that the officers searched the whole of the motel room, and took into their possession a Richo camera and a number of boxes of film for a Polaroid camera. The defendants point to the following from Chimel v. California as au-

thority that the search of this room was unlawful:

"There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less." 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694.

However, the record is clear that a Richo camera was in clear sight, near where Tisdel was standing at the time of the arrest, and the officers took into their possession that camera. There was also Polaroid film in the room, but there were no markings on that and the film was later returned to Tisdel. Neither the Richo camera nor the Polaroid film was offered in evidence at the trial. The camera taken from the room was taken at the time of the arrest of Tisdel, and the camera was in the near vicinity of Tisdel at the time of the arrest. Under these facts, the *Chimel* statements and rule making illegal an indiscriminate search out of the vicinity of the arrested defendant are not applicable. The search of the trunk of the Dodge car was made under the authority of a search warrant which for the reasons noted *infra* must be assumed to have been properly issued. It is the court's conclusion that there is no error in this regard.

■ Error is assigned to the trial court's permitting introduction of testimony from defense witness Nelson to the effect defendant Tisdel had been in the Idaho State Penitentiary. Tisdel did not take the stand during the trial. Mr. Nelson, a defense witness, had previously testified that he had been staying with Tisdel in the motel, and that he had gone to bed about 3:00 or 3:30 Sunday morning, and that Tisdel had gone to bed a few minutes later. During cross-examination of Nelson by the State it was brought out without objection that Nelson had previously been convicted of a felony. He was asked how long he had known Mr. Tisdel, and the following testimony was elicited:

"A. Several years. I don't know the exact number of years.

Q. Would you care to tell the jury your association with him?

Mr. McDERMOTT: Just a minute. I object as being incompetent, irrelevant and immaterial, no bearing on the issues in this case.

THE COURT: Overruled. He may answer.

THE WITNESS: I have known him at the Idaho State Penitentiary.

THE COURT: Sorry, the jury can't hear you.

THE WITNESS: I first met him at the Idaho State Penitentiary.

Mr. McDERMOTT: Your honor, this is highly prejudicial, and I am going to object to this line of questioning; certainly not fair.

THE COURT: The objection is overruled. The answer will stand."

The trial court erred in allowing this testimony to come before the jury over objection. It is evident that the prosecutor knew what the answer would be. Certainly this was irrelevant to the issues then before the court. Only in limited areas is evidence of past criminality allowed to come before the jury, and this is not one of them. State v. Shepherd, 486 P.2d 82 (Idaho 1971).

■ Tackett presents a like issue concerning testimony of a prior felony conviction against him. He complains of the examination by the prosecutor and asserts this examination should have been limited to the one question as to whether Tackett previously had been convicted of a felony. The discussion was as follows:

"Q. Have you ever been convicted of a felony, Mr. Tackett?

A. Yes, sir, about 10 years ago.

Q. What was it please?

A. Forgery, when I was a kid.

Q. What was your answer?

A. When I was 17 years old.

Q. How old are yon now, sir?

A. Twenty-seven.

Q. What year were you convicted?

A. I think it was in '61."

No objection was interposed to this line of questioning. The additional questioning after Tackett admitted the conviction in this instance would tend to mitigate the impact on the minds of the jurors of the felony conviction. This questioning was done in accordance with the procedure authorized in State v. Owen, 73 Idaho 394, 253 P.2d 203 (1953). We find no fundamental error was committed by the trial court in this regard, even though this court in State v. Shepherd, supra, overruled State v. Owen, supra. It is our conclusion that there is no necessity of giving retroactive effect to State v. Shepherd, supra, when no objection is made to the further examination of the accused following his admission of a previous felony conviction. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

As to Tisdel the state contends that if the trial court erred in this regard it was non-prejudicial error, pointing to the provisions of I.C. § 19–2819, which states:

"After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

The state also points to I.C. § 19–3702, which states

"Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right."

The sections quoted apply to the rejection and admission of evidence which is not prejudicial to a defendant's rights. State v. Fondren, 24 Idaho 663, 135 P. 265 (1913). In State v. Gilbert, 65 Idaho 210, 142 P.2d 584 (1943), it was held that where the evidence of defendant's guilt is satisfactory and is such as ordinarily produces moral certainty or conviction in an unprejudiced mind, and the result would not have been different had an error in the trial not been committed, the cause will not be reversed. See also: State v. Brady, 105 Ariz. 190, 461 P.2d 488 (1969), which points out that the test of whether an error is prejudicial or not is whether under the facts there was reasonable probability that a verdict might have been different had the error not been committed.

In the instant case the record, in the opinion of the court, indicates strong evidence of Tisdel's participation in the crime, and it is difficult to see, contrary to the delicate situation presented in the *Shepherd* case, supra, how any different result would follow on retrial if the case were reversed on this ground. The error by the trial court in this regard, allowing this testimony to be admitted, was not sufficiently prejudicial in nature to warrant reversal and a new trial. State v. Oldham, 92 Idaho 124, 438 P.2d 275 (1968); State v. Zamora, 93 Idaho 625, 469 P.2d 752 (1970); State v. Sanchez, 94 Idaho 125, 483 P.2d 173 (1971).

■ Defendant Tackett asserts that his constitutional rights were violated by an improper identification procedure. The record reflects that when Knapp came to the sheriff's office he identified Tackett as the man who had been standing on the sidewalk near the car, following which identification Tackett was arrested. As noted, Knapp identified Tackett at trial without objection. Tackett testified as to this incident in the sheriff's office as follows:

"They took me and Curtis Nelson to the sheriff's office where they had Robert Knapp come over and when he come [sic] in the door he said 'That's the guy that was standing on the sidewalk.' Which was me, and I was on the sidewalk. I don't deny that, Sir.

Q. Where were you in the sheriff's office when Mr. Knapp came in?

A. I was sitting in the back behind the desk that they had there in the front office in the sheriff's office.

Q. Was anyone else with you?

A. No, sir, there was not.

Q. Did you have any conversation with Mr. Knapp at that time?

A. Mr. Knapp asked me what time I was over there, 'What time was you standing on the sidewalk?' The officer told me he could not ask me any questions."

Tackett contends this was in violation of his constitutional rights, there being no counsel present who could have protected him against an unfair and suggestive confrontation, citing United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Stovall v. Denno, supra. The factual setting is not appropriate to Tackett's objections. Tackett himself admitted being present at the location and at the time in question, and thus the identification issue was completely resolved as to him. The other remaining issue was Tackett's explanation for his presence in front of the photo shop in the early morning hours. Knapp's identification of Tackett does not bear on that.

Tackett asserts that there was a complete lack of testimony to implicate him in the burglary. However, it was clear that Tackett was outside the photo shop and the testimony of the police officers established that he was in the motel at the time of their arrest of defendant Tisdel. Tackett explains his presence near the photo shop as follows: He asserts that he had been playing cards all night with some other men, and that he wanted to get a ride across town, and he went for that purpose to see a Mr. Hall who was staying at the Idaho Hotel. He testified that he went to Hall's room in the Idaho Hotel and woke Hall up and that Hall agreed to take him across town, telling Tackett to wait at his car. Tackett went to Hall's car on the street, found another man asleep in the car, and rather than disturb the sleeping man, just waited on the sidewalk. Tackett testified he didn't particularly notice anyone on the street at the time he was standing there. In opposition to this testimony, however, Mr. Knapp testified as to seeing Tackett on the street near the car in which Tisdel was depositing a package. It was for the jury to determine this conflict in the evidence, and this was resolved against Tackett. Much of the evidence connecting Tackett with the crime is circumstantial, but that alone is insufficient reason to upset a jury verdict. State v. Stevens, 93 Idaho 48, 454 P.2d 945 (1969); State v. Price, 93 Idaho 615, 469 P.2d 544 (1970). It is our conclusion there was substantial and competent, though conflicting, evidence to sustain this verdict, and hence, this court cannot disturb the verdict. State v. Ross, 92 Idaho 709, 449 P.2d 369 (1968); State v. Rolfe, 92 Idaho 467, 444 P.2d 428 (1968).

■ By their fifth assignment of error, the defendants claim that the court erred in not granting their motion to suppress evidence. We find no error in this regard. The motion to suppress was directed to all evidence obtained from the motel room, and also all the evidence obtained from a search of the car. The only evidence admitted at trial was that obtained from the car as a result of the search pursuant to the issuance of a search warrant. There is no record before this court as to the proceedings before Judge Loveless leading to the obtaining of the search warrant, and absent any record (such as the affidavits submitted in support of the warrant application), this court cannot pass on the validity of the proceedings leading to issuance of the search warrant.

Having considered all of the assignments of error, we find no grounds for reversal. The judgment of conviction of each of the defendants is affirmed.

McQUADE, C. J., and DONALDSON, SHEPARD and SPEAR, JJ., concur.