509 P.2d 331

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Robert Howard WILBANKS, Defendant-Appellant.**

**No. 11023.**

Supreme Court of Idaho.
April 18, 1973.

Brauner, Fuller & Doolittle, Caldwell, for defendant-appellant.

W. Anthony Park, Atty. Gen., Peter E. Heiser, Asst. Atty. Gen., Boise, for plaintiff-respondent.

McQUADE, Justice.

In this case we are called upon to determine whether appellant was afforded his constitutional rights to a speedy and fair trial and to due process of law. Because appellant bases part of his appeal on the events leading up to his trial on two counts of forgery and a persistent violator charge on September 8 and 9, 1971, the undisputed facts are related in some detail.

On December 2, 1970, appellant Wilbanks was arrested and charged with forgery of a $20 check allegedly passed on or about October 31, 1970, (hereafter referred to as the "October check"). After a preliminary hearing was held on December 15, 1970, appellant was held to answer the charge in district court. On February 10, 1971, an information was filed in district court. Trial was set for June 14 and 15, 1971 on the October check charge. The State discovered an error in the pleading of the check and filed an amended complaint on March 24, 1971. On April 22, 1971, an arrest warrant on the amended charge was served on appellant in the Canyon County jail.

The preliminary hearing on the amended charge was held on May 10, 1971. At that time, appellant complained of the delay between arrest and trial, and requested a reduction of bail. The magistrate reduced appellant's bail to $750, but appellant was unable to raise this amount and remained incarcerated.

An amended information was filed on May 13, 1971. This information contained a list of witnesses relating to the alleged forgery of the October check. A preliminary hearing was held on the amended charge, and trial was scheduled for June 15 and 16, 1971, a delay of one day from the original scheduling of the trial. On June 9, 1971, shortly before the rescheduled trial, the prosecuting attorney moved for permission to add additional witnesses to the information. In that motion, he asserted that an investigation had shown that the appellant had "passed at least three other checks" in November, 1970, and that he wished to present witnesses concerning those occurrences to show a common scheme, plan, or method. Included in the motion was the statement:

"At the time of filing the Information, it had not been determined whether the better procedure would be to charge the Defendant with a Forgery of each of these three other checks or to charge him solely with the forgery of the check on which the Information was filed in this Court."

The appellant's counsel opposed the motion to amend the information on the ground that there would not be sufficient time to interview the additional witnesses in preparation for trial, and that the prosecution had had the names of the witnesses since the information was filed. The district judge denied the motion on the ground that adding additional witnesses at that late date would be prejudicial to the appellant. In the order denying the motion the district judge expressed his opinion that the names of the additional witnesses had been known to the prosecuting attorney at the time the amended information was filed.

At the jury trial on June 15, 1971, appellant was found not guilty of the forgery of the October check.

Appellant was not released from jail upon his acquittal but was arrested by the sheriff and delivered into the custody of the United States Marshal on a parole violation warrant. Appellant was returned to Canyon County jail as a federal prisoner on June 19, 1971. On June 23, 1971, Riley R. Newton of the Nampa Police Department swore to a three-count complaint charging appellant with forgery of the three checks (hereafter called the "November checks") mentioned in the prosecuting attorney's motion to expand his list of witnesses shortly prior to trial on the October check. The new complaint was filed on June 24, 1971, and an arrest warrant was served on appellant in the Canyon County jail on June 25, 1971. Specifically, these new charges related to an alleged forgery with intent to defraud "Lloyd's Lumber Co., an Idaho Corporation," an alleged forgery with intent to defraud "Mallea's Pharmacy, Nampa, and Jim Mallea, its owner," and an alleged forgery with intent to defraud the "Seven Seas Tavern, an Idaho Corporation." The amounts of the checks listed in the new complaint were $12, $15 and $20. After the new State's charges were filed, the federal parole violation charge was dropped. Apparently, although the only place it appears in the record is in the respondent's brief, on the day that appellant was scheduled to appear before the magistrate on the new charges, counsel for appellant telephoned the magistrate and requested a postponement while Wilbanks was in the hospital for tests. On July 13, 1971, a hearing on motion for continuance was held and the preliminary hearing was scheduled for August 12, 1971.

On August 9, 1971, appellant filed a petition for a writ of habeas corpus, alleging that the State had deliberately delayed filing charges on the November checks until after appellant's acquittal on the October check charge and that such action was part of a plan to harass appellant, depriving him of his rights to speedy trial and due process of law. At the hearing on the petition, held August 11th, Detective Riley Newton testified that all three checks figuring in the new charges were known to the prosecution prior to the filing of the amended charge in the prior case in March, 1971. However, he also testified that he was "ninety-nine percent sure" that his department did not have all three of the November checks on December 2, 1970, the date of appellant's arrest on the October check charge. He also mentioned that the three November checks, were sent to "an agency" for analysis and that the usual period of time involved in this procedure is two months. It is not clear from the record when these two months were, but it appears that it was some time in early 1971. It also appears that the "agency" referred to was the Federal Bureau of Investigation. Newton testified that the October check was not mailed to the "agency" because of time pressures. Appellant testified at the hearing that his memory had dimmed as to his actions in November, 1970. Habeas corpus relief was denied.

At the preliminary hearing held the next day, August 12, 1971, appellant was ordered to answer to the charges of forgery of the November checks in district court. On August 20, 1971, the State filed an information in the case from which the third count of forgery had been dropped (relating to the "Seven Seas Tavern" check) and a persistent violator charge had been added. The State alleged that appellant had been convicted of four previous felony forgeries.

On the morning of the trial, September 8, the appellant filed a motion to dismiss on the basis that he had been denied his right to a speedy trial. Although the district judge indicated his displeasure at the fact that the State had refrained from prosecuting appellant on the November checks until he had been acquitted for the forgery of the October check, he stated that the time for computing a speedy trial begins running at the date of the filing of the complaint and denied the motion.

After trial, appellant was found guilty on both forgery counts and on the persistent violator charge. The district court en-

tered a judgment of conviction on the two forgery counts, but not on the persistent violator charge. He sentenced appellant to two concurrent fourteen year terms in the Idaho State Penitentiary.

On this appeal, appellant makes two assignments of error which we will deal with in turn. The first is set out in full below:

"1) The Trial Court erred in denying Defendant-Appellant's Motion to Dismiss because the capricious, deliberate, oppressive tactics of the prosecutor in holding back known charges and filing them only after Defendant-Appellant's acquittal on an original charge, and then bringing Defendant-Appellant to trial only after nine months incarceration, deprived Defendant-Appellant of his right to a speedy trial and to due process of law.

The right to a speedy trial in Idaho is guaranteed to an accused by the Idaho Constitution,[1] by statute,[2] and by the speedy trial guarantee of the United States Constitution[3] which is binding on the states.[4] However, the fundamental, or threshold question that must be answered before applying speedy trial standards to a given case is: When is the right to a speedy trial activated? The Idaho case of Jacobson v. Winter[5] held that the relevant period for measuring the State's delay in bringing a case to trial begins to run at the time of filing of a criminal complaint. The recent United States Supreme Court case of United States v. Marion[6] held that the speedy trial right is activated at the point when a defendant formally becomes an "accused," whether that be by arrest, the filing of a complaint, or by indictment or information.

In that case, the two appellees had been indicted by a federal grand jury in 1970 and charged in nineteen counts with fraud and other offenses connected with running a home improvement business. The indictment was returned three years after the end of the criminal scheme charged. The appellees moved to dismiss the indictment because of "unreasonably oppressive and unjustifiable" delay between the alleged offenses and the return of the indictment. The district court judge dismissed the indictment for "lack of speedy prosecution." The United States Supreme Court reversed. In *Marion,* the Court firmly declined to apply the speedy trial guarantee to any period prior to accusation, even though the prosecuting authorities had knowledge of the offense long before the formal initiation of the prosecution. In the decision, the Court quoted with approval from United States v. Ewell,[7] " 'the applicable statute of limitations * * * is * * * the primary guarantee against bringing overly stale criminal charges.' "[8]

Appellant would have us compute the delay in bringing him to trial, on charges of forging the November checks, from December 2, 1970, when he was arrested on the charge of forging the October check. Such a computation would be improper. As respondent points out, appellant Wilbanks, during the period from December 2, 1970, to September 9, 1971, was the defendant in two completely separate and distinct prosecutions for forgery. The first prosecution was initiated by appellant's arrest on December 2, 1970, on the charge of forging the October check. That case was terminated by appellant's acquittal on June 15, 1971. The second distinct prosecution was initiated by the filing of the complaint on the November check forgery charges on June 24, 1971, and was terminated on September 8 and 9, 1971, when appellant was

1. Idaho Const., art. I, § 13.

2. I.C. §§ 19–106, 19–3501.

3. U.S.Const., amend. VI.

4. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

5. 91 Idaho 11, 415 P.2d 297 (1966).

6. 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

7. 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1965).

8. 404 U.S. at 322, 92 S.Ct. at 464.

tried and convicted on two counts of forgery involving the November checks.

■ Appellant was the accused, and entitled to a speedy trial, on the November check charges from June 24, 1971 to September 8 and 9, 1971. During this period, his right to a speedy trial on the charges of forging the November checks and on the persistent violator charge were not infringed. I.C. § 19–3501 provides that unless good cause is shown a prosecution or indictment must be dismissed:

"1. When a person has been held to answer for a public offense, if an indictment is not found against him at the next term of the court at which he is held to answer.

"2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial at the next term of the court in which the indictment is triable, after it is found."

In the November check prosecution, the complaint was filed, the warrant of arrest was served, and the information was filed during the same term of court. Appellant's trial in that case came at the beginning of the next term of court. Thus, the time period was well within that set by the legislature in its statutory implementation of the constitutional right to speedy trial. Furthermore, it appears that appellant himself caused a delay in the prosecution while he was in the hospital for tests.

■ To recapitulate: The rule in Idaho, now confirmed by the United States Supreme Court is that the speedy trial guarantee does not apply to pre-accusation delays. We cannot accede to appellant's demand that the legality and constitutionality of pre-accusation delay in this case be judged by speedy trial standards. Our decision does not in any respect relieve the

prosecuting authorities in Idaho of their duty to prosecute all cases diligently.

■ We turn now to a consideration of appellant's contention that the delay in charging him with the forgeries of the November checks, and the persistent violator charge, until after his acquittal on the charge of forging the October check, constituted a denial of due process of law. In United States v. Marion,[9] the Supreme Court established the criteria for determining whether pre-accusation delay amounts to a denial of due process of law. Before a due process violation can be found, it must be shown that the pre-accusation delay: "* * * caused substantial prejudice to [the defendant's right] to a fair trial and that the delay was a purposeful device to gain tactical advantage over the accused." [10]

The first issue to be determined is whether the pre-accusation delay in this case substantially prejudiced appellant's right to a fair trial. Several sources of possible impairment of the ability of an accused to defend due to pre-accusation delay have been discussed in the cases, including the dimming of memories, the disappearance of witnesses and the loss of evidence.[11] In this case, appellant claims that he was prejudiced because his memory had dimmed as to his whereabouts and activities during the period of time when the November checks were passed. He also alleges prejudice due to the dimming of the memories of the State's witnesses.

■ An alleged dimming of a defendant's memory due to pre-accusation delay is not by itself a sufficient basis for a finding of substantial prejudice.[12] In regard to the alleged dimming of the memories of the State's witnesses, the only defect in the memory of either witness to whom appellant refers, which is apparent

9. *Supra, note* 6.

10. 404 U.S. at 324, 92 S.Ct. at 465.

11. *E. g.*, United States v. Hauff, 461 F.2d 1061 (7th Cir. 1972).

12. United States v. Hauff, *supra, note* 11; United States v. Griffin, 464 F.2d 1352 (9th Cir. 1972); Whitted v. United States, 411 F.2d 107 (9th Cir. 1969); Wilson v. United States, 409 F.2d 184 (9th Cir. 1969).

from the record, was in regard to the precise date in November, 1970, when the forged check was passed to him. Neither had any difficulty in remembering Wilbanks or the details of the transactions in which he uttered the forged checks. Both witnesses had met or been acquainted with appellant previous to the transactions which involved the passing of the forged checks. The danger of misidentification of the appellant by the State's witnesses, which was one of the primary reasons for the reversal of the conviction in Ross v. United States,[13] relied on by the appellant, was remote in this case.

Appellant has not shown and did not show at trial that any evidence was lost. He has made no showing that any potential witnesses were made inaccessible by the delay nor has he shown what they could have proved had they been available. We do not find that appellant has made a showing of substantial prejudice. Furthermore, appellant has presented no solid evidence that the conduct of the prosecution was "an intentional device to gain tactical advantage" over him. He asks us to infer the motives of the prosecution from what is little more than a bare recital of the events between his arrest in the first case and his conviction in the second case. Prior to the trial in the October check case, the prosecutor attempted to add witnesses relating to the November checks to the information, but was precluded from doing so by the appellant's motion. This left the prosecutor with two alternatives: to bring separate charges on the November checks or to abandon any further action on them. Appellant would have us decide that the second alternative was mandatory because the prosecutor knew of the November checks by March, 1971, but did not amend the information in the first case to add those charges. We decline to make such a decision.[14]

■■ Prosecuting attorneys are vested with discretion in deciding when to prosecute.[15] Idaho has enacted a statute whereby two or more offenses may be charged in the same indictment or information:

> "[I]f the offenses charged, * * * are of the same or similar character or are based on the same act or transaction or on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan."[16]

This statute is permissive only, impliedly leaving discretion as to whether or not to utilize it in the hands of the prosecuting attorney. In fact, it has been pointed out that joinder of similar offenses for trial can sometimes work to the prejudice of an accused, rather than to his benefit, as where: "the jury [may regard] one offense as corroborative of the other when, in fact, no such corroboration exists."[17]

■ Neither do we find that the addition of the persistent violator charge constituted an abuse of the prosecuting attorney's discretion or that it is indicative of malice. In any event, no additional sentence was imposed as a result of appellant's conviction on that charge and so there is no relief that could be granted in that respect, even if we were to find that trying appellant on that charge was somehow improper.

---

13. 121 U.S.App.D.C. 233, 349 F.2d 210 (1965). The *Ross* case has not met with much approval in the other Courts of Appeal and has been flatly repudiated in one circuit. United States v. Judice, 457 F.2d 414 (5th Cir. 1972). Other circuits have refused to follow the case on different facts. *E. g.*, United States v. Stanley, 422 F.2d 826 (9th Cir. 1969); United States v. Deloney, 389 F.2d 324 (7th Cir. 1968); United States v. Sanchez, 361 F.2d 824 (2nd Cir. 1966).

14. *Cf.* Scott v. State, 84 Nev. 530, 444 P.2d 902 (1968).

15. *Cf.* I.C. § 19–1306. *See generally* Annot., 155 A.L.R. 10 (1945).

16. I.C. § 19–1432.

17. A.B.A. Standards Relating to Joinder and Severance, Commentary to § 1.1(a) (Approved Draft, 1968).

In summary, we find no denial of appellant's rights to a speedy trial and to due process of law as alleged in his first assignment of error.

 Appellant's second assignment of error reads as follows:

"The Trial Court erred in denying Defendant-Appellant's Motion for a mistrial after the prosecutor was guilty of misconduct in flagrantly brandishing a fingerprint card before the jury and attempting to prejudice the jury by offering evidence of a prior arrest of Defendant-Appellant on a charge of which he had been acquitted."

The circumstances of the incident to which appellant refers are these: During the trial, the prosecuting attorney called Detective Glendon Crawforth of the Nampa Police Department as a witness and proceeded to lay a foundation for the introduction of appellant's jail record card and fingerprint card dating from the December 2, 1970, arrest on the charge of forging the October check, of which charge appellant was acquitted on June 15, 1971. During this procedure, the prosecuting attorney elicited from Detective Crawforth the fact that the cards were a jail record card and a fingerprint card, and the fact that appellant had signed them.

The State's purported purpose in attempting to introduce the arrest records into evidence was to provide exemplars of appellant's handwriting. Appellant points out that there was no handwriting expert included among the State's witnesses listed on the information.

After obtaining permission to question Officer Crawforth in aid of objection, appellant's counsel elicited from Crawforth the date on which the cards were signed by appellant. He then objected to the introduction of the instruments as evidence, asserting that they were calculated to prejudice and inflame the jury. The district court, after remarking in the presence of the jury, "This is prior to the arrest in this case," characterized the State's action as "highly prejudicial" and of its own motion ordered all of Officer Crawforth's testimony stricken from the record. He admonished the jury not to consider Crawforth's testimony in connection with their deliberations. Out of the presence of the jury, counsel for appellant moved for a mistrial. Although the district court described the above transaction as:

"[A]n attempt on behalf of the Prosecution, to inject before the jury, an arrest on a similar charge through disguise of furnishing the Court—furnishing the Court and Jury with exemplars of the Defendant's handwriting,"

he denied the motion for mistrial. At time of sentencing, appellant made motions for withholding judgment, in arrest of judgment and for a new trial, all of which were denied.

 Every person accused of crime in Idaho has the right to a fair and impartial trial. It is the primary and fundamental duty of the prosecuting attorney and his assistants to see that an accused receives a fair trial.[18]

"Counsel for the people in a criminal case must constantly keep in mind that the people he represents are only concerned with the truth and the facts established by competent admissible evidence."[19]

In reversing the judgment of conviction in the case of Berger v. United States,[20] the Supreme Court of the United States made the following statement:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose

18. State v. Haggard, 94 Idaho 249, 251, 486 P.2d 260 (1971); Pulver v. State, 93 Idaho 687, 691, 471 P.2d 74 (1970); State v. McKeehan, 91 Idaho 808, 821, 430 P.2d 886 (1967); State v. Storms, 84 Idaho 372, 378, 372 P.2d 748 (1962).

19. State v. Storms, *supra note* 18, 84 Idaho at 378, 372 P.2d, at 751.

20. 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." [21]

This Court, in the case of State v. Griffith [22] has said:

"While each side ought to present the case vigorously, the prosecution's role takes on larger proportions. * * * [A] reference to the Canons of Professional Ethics of the Idaho State Bar sums our views. Canon 5 includes the following language, 'The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done * * *.' " [23]

The district judge in the case before us found the fingerprint card and the jail record card inadmissible as evidence for the purpose for which they were offered. He termed the action on the part of the prosecuting attorney "highly prejudicial" and found it to be "an attempt on behalf of the prosecution to inject before the jury an arrest on a similar charge through the disguise of furnishing * * * the Court and Jury with exemplars of the Defendant's handwriting." The question before us is whether the attempted introduction of the jail cards by the prosecution was so inherently prejudicial that no instruction from the district judge that the testimony

be stricken and disregarded by the jury could have been strong enough to overcome the prejudice created. We conclude that the possibility of prejudice in this case was not so strong as to have warranted the declaration of a mistrial.

In State v. Ramsbottom,[24] where character evidence was improperly before the jury, and a mistrial was denied, this Court, in affirming the judgment of conviction said:

"A motion for mistrial is directed to the trial court's sound discretion, and the ruling thereon will not be disturbed unless there be shown such an abuse of discretion that a party's rights are prejudiced. [Citations omitted].

"Error in the admission of evidence may be cured by a proper instruction to the jury. [Citations omitted]. It must be presumed that the jury obeyed the trial court's instruction to disregard entirely the objectionable testimony." [25]

Two recent Idaho cases, State v. Urie,[26] and State v. Rolfe,[27] have found improper allusions to prior convictions or bad acts on the part of a defendant cured by the admonition of the trial court to the jury to disregard the prejudicial matter.

In addition to the *Ramsbottom, Urie*, and *Rolfe* cases, *supra*, there is another recent Idaho case dealing directly with the matter before us. In the case of State v. Tisdel,[28] Tisdel and another were tried and convicted of the crime of first degree burglary. During the course of the cross-examination of a defense witness, the prosecuting attorney inquired as to the witness's association with Tisdel. The witness, over an objection by the defense, was permitted to testify that he had first met Tisdel in the Idaho State Penitentiary. Tisdel had not taken the stand or otherwise put his character in issue. Such testimony was never stricken and the jury was never ad-

21. 55 S.Ct., at 633.

22. 94 Idaho 76, 481 P.2d 34 (1971).

23. *Id.*, at 84, 481 P.2d, at 42.

24. 89 Idaho 1, 402 P.2d 384 (1965).

25. *Id.*, at 10, 402 P.2d, at 389.

26. 92 Idaho 71, 437 P.2d 24 (1968).

27. 92 Idaho 467, 444 P.2d 428 (1968).

28. 94 Idaho 329, 487 P.2d 692 (1971).

monished. This Court found error in the allowance of such testimony and said:

"It is evident that the prosecutor knew what the answer would be. * * * Only in limited areas is evidence of past criminality allowed to come before the jury, and this is not one of them." [29]

However, this Court found the error insufficient to warrant reversal of the conviction and stated the rule to be followed in Idaho for determining whether exposure of the jury to prejudicial evidence warrants a reversal of conviction and a new trial:

"[W]here the evidence of defendant's guilt is satisfactory and is such as ordinarily produces moral certainty or conviction in an unprejudiced mind, and the result would not have been different had an error in the trial not been committed, the cause will not be reversed. See also: State v. Brady, 105 Ariz. 190, 461 P.2d 488 (1969), which points out that the test of whether an error is prejudicial or not is whether under the facts there was reasonable probability that a verdict might have been different had the error not been committed." [30]

The Court went on to say:

"In the instant case the record, in the opinion of the court, indicates strong evidence of Tisdel's participation in the crime, and it is difficult to see, contrary to the delicate situation presented in the *Shepherd* case [(State v. Shepherd) 94 Idaho 227, 486 P.2d 82 (1971)] how any different result would follow on retrial if the case were reversed on this ground." [31]

In this case, there was substantial evidence such as would produce conviction of appellant's guilt in an unprejudiced mind, and it is difficult to see how any different result would follow if the case were reversed on this ground, and a new trial granted. Further, while in no way excusing the attempt by the prosecuting attorney to introduce evidence of a prior arrest on a different charge, we note that it was the attorney for appellant who elicited in the presence of the jury the date on which the cards were signed, which may in turn have prompted the district court's remark (also in the presence of the jury) that "This was prior to the arrest in this case." Until this occurred, the jury had no way of knowing that the cards did not relate to the arrest of the appellant for the crime for which he was then being tried.[32]

In summary, we conclude, that the sequence of events involving the prior arrest records was not so inherently prejudicial as to have required the declaration of a mistrial, particularly in light of the district court's action in striking the testimony and admonishing and instructing the jury to disregard it.

Judgment affirmed.

DONALDSON, C. J., and SHEPARD, McFADDEN and BAKES, JJ., concur.

---

29. *Id.*, at 331, 487 P.2d, at 674.

30. *Id.*, at 332, 487 P.2d, at 695.

31. *Id.*, at 332, 487 P.2d, at 695; *cf.* State v. Moen, 94 Idaho 477, 491 P.2d 858 (1971).

32. *Cf.*, State v. Jones, 410 P.2d 219, 222 (Ore.1966).