IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 41358

STATE OF IDAHO,                                    )
                                                   )      2014 Opinion No. 71
        Plaintiff-Respondent,                      )
                                                   )      Filed: September 2, 2014
v.                                                 )
                                                   )      Stephen W. Kenyon, Clerk
MARVIN G. ORELLANA-CASTRO,                         )
                                                   )
        Defendant-Appellant.                       )
                                                   )

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Judgment of conviction for four counts of sexual abuse of a minor, vacated, and case remanded.

Sara B. Thomas, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Marvin Orellana-Castro was convicted of four counts of sexually abusing his stepdaughters in violation of Idaho Code § 18-1506. On appeal, he argues that the district court erred by failing to order separate trials for unrelated charges of sexual abuse of different children, by excluding evidence proffered to show an alternative cause for one child's psychiatric symptoms, and by failing to provide adequate relief when a court interpreter admitted that some of his translations had been incomplete. We vacate and remand.

## I.

## BACKGROUND

Orellana-Castro was charged with two counts of lewd conduct, I.C. § 18-1508, and two counts of sexual abuse of a minor, I.C. § 18-1506, for conduct with his stepdaughter, G.O., and two counts of sexual abuse of a minor for conduct with his other stepdaughter, S.O. Orellana-

1

Castro unsuccessfully moved to sever the trial of charges regarding G.O. from the trial of charges regarding S.O.

At the jury trial that followed, the State presented the testimony of the alleged victims, and several expert witnesses opined that G.O. displayed psychological symptoms that were caused by the trauma of sexual abuse. Orellana-Castro testified that he did not sexually assault either girl and called witnesses who testified to his good character and others who opined that G.O. was dishonest. He also proffered evidence that G.O.'s psychological symptoms could have been caused by sexual molestation of G.O. by a third party. The district court excluded this evidence. The jury found Orellana-Castro guilty of all four counts of sexual abuse, but was unable to reach a verdict on either charge of lewd conduct with G.O.

## II.

## ANALYSIS

### A.    Denial of Motion to Sever

Orellana-Castro sought to sever the trial so that charges relating to one victim would not be tried together with charges relating to the other victim. He contended that the joinder of the charges in a single charging document was improper because the alleged offenses were spatially and temporally separate and did not show a common scheme or plan. He also contended that the admission of evidence of allegations by one victim to prove that Orellana-Castro committed the charged crimes against the other victim would be barred by Idaho Rule of Evidence 404(b).

The court denied Orellana-Castro's motion, holding that the State's allegations showed the charged offenses were all part of a common scheme or plan. Orellana-Castro challenges this determination on appeal and argues that his trial was tainted by improper joinder.

Idaho Criminal Rule 8(a) authorizes charging two or more offenses by the same defendant in a single indictment or information if the offenses "are based on the same act or transaction or on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." Even where joinder meets the standards of Rule 8(a), severance of the trials for multiple charges may be ordered under I.C.R. 14 "if it appears that a defendant or the state is prejudiced" by the joinder of the offenses. Orellana-Castro argues both that the State's initial joinder of the charges was impermissible under I.C.R. 8(a) and that, even if the joinder was otherwise permissible, the trial court should have granted his motion to sever the trials to prevent prejudice. The two issues--whether the multiple charges qualified for joinder in

2

a single pleading under Rule 8(a) and whether severance of permissibly joined charges was necessary to prevent prejudice--are governed by different standards of review.

> Whether a court improperly joined offenses pursuant to I.C.R. 8 is a question of law, over which this Court exercises free review. In contrast, an abuse of discretion standard is applied when reviewing the denial of a motion to sever joinder pursuant to I.C.R. 14; however, that rule presumes joinder was proper in the first place. As we are reviewing the propriety of the initial joinder, we exercise free review.

*State v. Field*, 144 Idaho 559, 564-65, 165 P.3d 273, 278-79 (2007) (citations omitted). In *Field*, where the State had filed separate complaints that were thereafter joined for trial on the State's motion, the Idaho Supreme Court engaged in free review because it was "reviewing the propriety of the initial joinder." *Id*. at 565, 165 P.3d at 279.

In *State v. Anderson*, 138 Idaho 359, 63 P.3d 485 (Ct. App. 2003), the State also filed separate charging documents. The magistrate, sua sponte, joined the cases, and the defense responded by making a motion to sever. There, this Court engaged in free review, and explained:

> [The defendant] has appealed only whether the magistrate improperly joined the offenses pursuant to Rules 8(a) and 13. The state erroneously argues that the magistrate's decision to join the offenses is governed by an abuse of discretion standard, citing *State v. Cirelli*, 115 Idaho 732, 734, 769 P.2d 609, 611 (Ct. App. 1989) and *State v. Gooding*, 110 Idaho 856, 719 P.2d 405 (Ct. App. 1986). *Cirelli* and *Gooding*, however, address a review of a trial court's decision denying a motion for severance under I.C.R. 14. Rule 14 permits a trial court to sever defendants, or grant separate trials of counts, if a party is prejudiced by an *otherwise permissible* joinder under Rule 8(a).

*Id*. at 361 n.1, 63 P.3d 487 n.1 (emphasis in original).

Thus, there are two standards of review applicable to Orellana-Castro's claim of error. Irrespective of whether counts were joined by the State pursuant to I.C.R. 8 or joined by the court pursuant to I.C.R. 13, we review the propriety of an initial joinder *de novo* because it involves solely a question of law. On the other hand, the trial court's determination that Orellana-Castro would not be prejudiced by the joinder is reviewed for an abuse of discretion

As noted above, multiple offenses may be charged in the same case if they are based on "two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." I.C.R. 8(a). This standard was applied in *Field*, where a single trial was conducted on charges that the defendant sexually molested a seven-year-old girl in September

3

2003 and a seventeen-year-old girl in November 2001. *Field*, 144 Idaho at 563-64, 165 P.3d at 277-78. On appeal, the defendant challenged the joinder. The Idaho Supreme Court rejected the State's argument that the two offenses were connected as parts of the defendant's common scheme or plan to take advantage of underage females who came into his home to babysit or be babysat. The Court said that "the incidents occurred at different times, under different circumstances, and involved different parties with significantly different ages." *Id.* at 566; 165 P.3d at 280. The Court observed that there was no evidence "to show that at the time [the defendant] committed the offense [against the older victim in 2001] he had a plan to also commit an offense [against the younger victim in 2003], specifically, or to commit an offense against someone he would be 'babysitting' two years later." *Id.* at 566, 165 P.3d at 280. The Court therefore held that the trial court erred by joining the two charges for trial.

A circumstance where joinder was found proper is illustrated by *State v. Schwartzmiller*, 107 Idaho 89, 685 P.2d 830 (1984). In that case, there were similarities in the victims, both fourteen-year-old boys, and in the means by which the defendant obtained access to his victims and groomed them for abuse:

> Schwartzmiller frequents areas where young boys may be found, befriends boys with no father figure in the home, entices them from their homes, lowers their natural inhibitions through the use of drugs and alcohol, and commits sex acts upon them.

*Id.* at 93, 685 P.2d at 834. Given these similarities, the Court affirmed the joinder on the basis of common scheme or plan.

Both *Field* and *Schwartzmiller* predate the Idaho Supreme Court's decision in *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009), where the Court adopted a more circumscribed view of the "common scheme or plan" than had previously been applied to the admissibility of evidence under Idaho Rule of Evidence 404(b). While *Grist* and its progeny address the admissibility of evidence, not the permissibility of joinder, we consider these cases as persuasive authority for determining what amounts to a common scheme or plan for purposes of joinder. In *Grist*, the Court held that its prior opinions should not be interpreted to imply that a relaxed standard applies for I.R.E. 404(b) analysis sexual abuse cases. The *Grist* opinion warns that trial courts "must carefully scrutinize evidence offered under I.R.E. 404(b) for purposes of 'corroboration' as demonstrating a 'common scheme or plan' in order to determine whether such evidence actually serves the articulated purpose or whether such evidence is merely propensity

4

evidence served up under a different name." *Grist*, 147 Idaho at 55, 205 P.3d at 1191. The Court then vacated the judgment of conviction in *Grist* and remanded for a new trial because the district court had applied an inappropriate standard in determining whether to admit evidence of the defendant's uncharged misconduct.

Following *Grist*, the Idaho Supreme Court further addressed the meaning of "common scheme or plan" in *State v. Johnson*, 148 Idaho 664, 227 P.3d 918 (2010). There, during defendant's trial for molesting his six or seven-year-old daughter, the court admitted evidence of his previous, uncharged sexual conduct with his younger sister. The State maintained that the conduct with the sister was similar to the charged offense in that: "(1) both victims were about seven to eight years old; (2) both victims viewed Johnson as an 'authority figure' because he was an older brother or father; (3) both courses of conduct involved Johnson requesting the victim to touch his penis." *Id.* at 669, 227 P.3d at 923. The Court held that these similarities were insufficient to make the uncharged acts admissible under I.R.E. 404(b):

> These similarities, however, are sadly far too unremarkable to demonstrate a "common scheme or plan" in Johnson's behavior. The facts that the two victims in this case are juvenile females and that Johnson is a family member are precisely what make these incidents unfortunately quite ordinary.

*Id.* The Court distinguished evidence of a unified scheme or plan from "inadmissible evidence merely demonstrating the defendant's predisposition for opportunistically molesting children." *Id.* at 669 n.5, 227 P.3d at 923 n.5.

In this case, we conclude joinder was improper because, as in *Johnson*, the similarities in the charged conduct and the victims are "far too unremarkable" to imply a common scheme or plan, nor are there other pleaded facts suggesting that the episodes with the two victims were in some way linked through a "plan." As in *Field*, the State's allegations offer no reason to believe that Orellana-Castro consciously planned his conduct or that his molestation of one victim was part of a criminal design to molest the other. One could infer that Orellana-Castro simply intended to opportunistically molest the female children to whom he had access. While repugnant, such intent does not justify joinder.[1] *See Johnson*, 148 Idaho at 669, 227 P.3d at 923.

---

[1]     Because we conclude that the charges involving different victims were improperly joined, we need not address Orellana-Castro's arguments regarding I.C.R. 14.

Having found error in the joinder of the charges, we must determine whether this error necessitates a new trial. Where a defendant has shown error, reversal is appropriate unless the appellate court is convinced beyond a reasonable doubt that the violation did not contribute to the jury's verdict. *State v. Perry*, 150 Idaho 209, 227-28, 245 P.3d 961, 979-80 (2010). An error will be deemed harmless if the court is able to say beyond a reasonable doubt that the result of the trial would have been the same if the error had not occurred. *State v. Almaraz*, 154 Idaho 584, 598, 301 P.3d 242, 256 (2013).

We have identified some of the potential sources of prejudice from improper joinder as follows:

> (a) the possibility that the jury may confuse and cumulate the evidence, rather than keeping the evidence properly segregated; (b) the potential that the defendant may be confounded in presenting defenses; and (c) the possibility that the jury may conclude the defendant is guilty of one crime and then find him or her guilty of the other simply because of his or her criminal disposition, *i.e.*, he or she is a bad person.

*State v. Eguilior*, 137 Idaho 903, 908, 55 P.3d 869, 901 (Ct. App. 2002); *see also State v. Abel*, 104 Idaho 865, 867-68, 664 P.2d 772, 774-75 (1983). The Idaho Supreme Court has also pointed out that joinder of similar offenses for trial may lead the jury to regard one offense as corroborative of the other when, in fact, no such corroboration exists. *State v. Wilbanks*, 95 Idaho 346, 352, 509 P.2d 331, 337 (1973).

In determining whether an erroneous admission of evidence was harmless error, this Court evaluates the potential prejudice of the inadmissible evidence in the context of all the evidence presented at trial. *State v. Yager*, 139 Idaho 680, 687, 85 P.3d 656, 663 (2004). The State's evidence in this case was not overwhelming. G.O. testified that she had been forcibly raped, both vaginally and anally, by Orellana-Castro. S.O. testified that Orellana-Castro placed his hand under her shirt while she was asleep in a car he was driving and that, on another occasion, he attempted to remove her swimsuit while pulling her into his bed. No physical evidence corroborated the alleged victims' testimony.

The improper joinder in this case led to the jury hearing potentially prejudicial, inadmissible evidence. As noted above, whether two or more crimes constitute parts of a "common scheme or plan" justifying joinder under I.C.R. 8(a) is closely related to the question whether evidence of each of the charges would be admissible under I.R.E. 404(b) in a trial of

6

each charge separately. We have held above that the allegations of offenses against S.O. and against G.O. were not components of a "common scheme or plan," and the State has urged no other basis upon which one victim's allegations would have been admissible in a separate trial for the alleged offenses against the other victim. The joinder, which allowed the jury to hear this otherwise inadmissible evidence, thus leads to the possible prejudice that Rule 404(b) is designed to avoid. Admitting irrelevant evidence of other misconduct risks that, as stated in *Eguilior*, "the jury may conclude the defendant is guilty of one crime and then find him . . . guilty of the other simply because of his . . . criminal disposition." Specific to child molestation cases, the Idaho Supreme Court has noted that the admission of other molestation evidence risks that jurors will act on a "belief that sexual deviancy is a character trait of especially powerful probative value for predicting a defendant's behavior." *Johnson*, 148 Idaho at 670, 227 P.3d at 924. Further, as noted in *Wilbanks*, the jury may have regarded one of the victim's allegations as corroborative of the other's when there is no true corroborative value in the testimony.

The risk is particularly pronounced in this case because G.O.'s credibility was heavily attacked. The defense presented testimony from G.O.'s mother and maternal grandmother that she was dishonest. G.O.'s mother testified that G.O. "always lied" about "certain things" and was angry that her mother had married the defendant. G.O.'s grandmother testified that G.O. "has always told lies" and described G.O. as willing to get what she wanted "no matter what it takes." At least one juror must have had doubts about G.O.'s veracity, for the jury was unable to reach a verdict on the two counts charging lewd conduct with G.O. We cannot say beyond a reasonable doubt that the jury would have found Orellana-Castro guilty of the less serious charges of sexual abuse of G.O. if they had not heard S.O.'s testimony also making allegations against him.

Likewise, hearing G.O.'s testimony may have influenced the jury's view of the charges concerning S.O. As to the count involving Orellana-Castro's conduct with S.O. at his home, Orellana-Castro testified that he was teasing and playful and that his conduct was not sexual. G.O.'s testimony alleging forceful and overtly sexual assaults by Orellana-Castro could have contributed to the jury's finding that Orellana-Castro acted with intent to gratify lust or sexual desire in his actions with S.O.

7

The trial pitted Orellana-Castro's credibility against the credibility of the alleged victims. On this record, we cannot say beyond a reasonable doubt that the improper joinder of the charges did not contribute to the verdicts. Accordingly, the convictions must be vacated.[2]

**B.      Exclusion of Evidence of Sexual Abuse by a Third Party**

For guidance on remand we also address Orellana-Castro's assertion that the trial court erred by excluding proffered defense evidence that G.O. had been the victim of a sexual assault by a third party. Before trial, Orellana-Castro sought the court's permission to present evidence that G.O. had been raped by a third party notwithstanding the I.R.E. 412 general prohibition against evidence of an alleged sex crime victim's other sexual conduct. Orellana-Castro argued that the evidence should be allowed in order to rebut the State's evidence that G.O. exhibited certain psychological symptoms which the State's witnesses attributed to Orellana-Castro's offenses. The State indicated that it intended to call three witnesses to testify regarding the psychological effects of sexual assault and the symptoms G.O. exhibited. At that time, the district court reserved a final decision on the proffered defense evidence, holding that no testimony regarding G.O.'s prior sexual history would be admitted without a hearing outside of the presence of the jury and an offer of proof.

During trial, the State called four witnesses to testify about G.O.'s mental health. The first was a Children at Risk Evaluation Services (CARES) employee who testified that, based upon a "screen" of G.O. as part of a forensic interview, G.O. had significant anxiety, depression, anger, worry about her safety, sexual preoccupation, and sexual distress. The witness testified that these symptoms were consistent with sexual abuse and tended to corroborate G.O.'s testimony that she was sexually abused.

The second witness, a psychiatrist, testified that G.O. suffered post-traumatic stress disorder (PTSD) and depression. He said that PTSD is caused by trauma such as "physical or sexual abuse" or from "witnessing abuse." He was unwilling to attribute G.O.'s condition to any particular trauma and explained that he relied upon G.O.'s report of abuse by Orellana-Castro because investigating the veracity of her allegations was not required for his diagnosis.

---

[2]      Because of this disposition, we need not address Orellana-Castro's further argument on appeal that the district court erred by denying his motion for a mistrial predicated upon the court interpreter's admission that he had not fully and accurately translated all of the statements made by non-English-speaking witnesses.

Next, a licensed clinical social worker for the Idaho Department of Health and Welfare testified that he diagnosed G.O. with PTSD and major depression with psychotic features. The PTSD diagnosis was based upon G.O.'s symptoms and her report that Orellana-Castro had sexually assaulted her. The witness indicated that no other trauma had been reported to him.

Lastly, a psychologist in private practice described common symptoms resulting from childhood sexual abuse. He testified that G.O. had symptoms consistent with such abuse, including nightmares, acting out, anger, and depression. He said that certain of these symptoms could only have been triggered by sexual abuse.

After the State's case-in-chief, Orellana-Castro renewed his request to present evidence that another person had raped G.O. Defense counsel's offer of proof indicated that the evidence would show that while G.O. was attending a party in October 2011 (shortly after the last alleged offense by Orellana-Castro), a young man placed an intoxicating substance in G.O.'s drink and had sex with her while she was too intoxicated to consent. Orellana-Castro argued that this third party's sexual assault could explain G.O.'s symptoms to which the State's witnesses had testified. The State objected, arguing that such evidence was made inadmissible by the I.R.E. 412 prohibition against evidence of the past sexual behavior of the alleged victim of a sex crime. The State acknowledged that I.R.E. 412(b)(2)(A) permits evidence of past sexual conduct that could explain a victim's injury, but argued that this exception did not apply to psychological symptoms.

The district court held that the term "injury" in I.R.E. 412(b)(2)(A) referred only to physical injuries and not to psychological symptoms resulting from a sex offense, and therefore excluded evidence of the third-party rape. Orellana-Castro was permitted, however, to adduce evidence that from a very young age G.O. had witnessed and been threatened with domestic violence perpetrated by her biological father, which might also cause many of the same symptoms. On appeal, Orellana-Castro asserts that the court erred in excluding the evidence of the third party's sexual assault on G.O.

### 1. Psychological symptoms are not an "injury" under I.R.E. 412(b)(2)(A)

The parties primarily dispute the application of I.R.E. 412(b), which states:

> Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sex crime, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is--

9

(1)  admitted in accordance with subdivisions (c)(1) and (c)(2) and is constitutionally required to be admitted; or

 (2) admitted in accordance with subdivision (c) and is evidence of--
(A)  past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury.

Orellana-Castro contends that the court erred by holding that psychological symptoms resulting from abuse are not an "injury" for the purpose of I.R.E. 412(b)(2)(A).  When interpreting a rule of our Supreme Court, we apply the same standards of construction as are utilized with statutes.  *Miller v. Haller*, 129 Idaho 345, 350, 924 P.2d 607, 612 (1996); *Doe v. State*, 153 Idaho 685, 689, 290 P.3d 1277, 1281 (Ct. App. 2012).  We begin with an examination of the literal words of the rule and give the language its plain, obvious and rational meaning.  *Miller*, 129 Idaho at 350, 924 P.2d at 612.

We conclude that I.R.E. 412(b)(2)(A) refers exclusively to physical injuries.  First, in its common meaning, the term "injury" is usually understood to mean physical harm.  *See, e.g.*, THE NEW OXFORD AMERICAN DICTIONARY 874 (Elizabeth J. Jewell, et al. eds. 2001) (defining "injure" to mean "do physical harm or damage").  Second, the corresponding federal rule of evidence, on which the Idaho rule is based, has been interpreted to refer solely to physical injuries.[3]  *United States v. Shaw*, 824 F.2d 601, 603 n.2 (8th Cir. 1987), *abrogated on other grounds by Idaho v. Wright*, 497 U.S. 805 (1990); *see also State v. Cecil J.*, 913 A.2d 505, 514 (Conn. App. Ct. 2007) (psychological trauma not recognized as an "injury" for purposes of similar provision of rape shield statute).

Both the plain meaning of the term "injury" and persuasive authority indicate that "injury" refers solely to physical harm.  We therefore hold that G.O.'s psychological symptoms do not fall within the I.R.E. 412(b)(2)(A) provision allowing evidence of a victim's other sexual conduct for the purpose of showing the source of an injury.

---

[3]     One of the principal sponsors of the federal analog, in the floor debate on the House bill, stated that the exception permitted a defendant to "rebut[] the victim's claim that the rape caused certain *physical consequences*."  124 Cong. Rec. H11945 (daily ed. Oct. 10, 1978) (statement of Rep. Holtzman) (emphasis added).

## 2. Sixth Amendment right to present a defense

Our conclusion that evidence of a third party's rape of G.O. was excluded by I.R.E. 412 does not end our inquiry, for Orellana-Castro also argues that exclusion of the evidence violated his Sixth Amendment right to present a defense. In some circumstances, this constitutional right may be limited by I.R.E. 412 because the State "has a legitimate interest in protecting rape victims against unwarranted invasions of privacy and harassment regarding their sexual conduct." *State v. Ozuna*, 155 Idaho 697, 702, 316 P.3d 109, 114 (Ct. App. 2013). However, when I.R.E. 412 violates the constitutional right to a defense guaranteed by the Sixth Amendment, the rule must give way. *Ozuna*, 155 Idaho at 703, 316 P.3d at 115; *State v. Self*, 139 Idaho 718, 722, 85 P.3d 1117, 1121 (Ct. App. 2003); *State v. Peite*, 122 Idaho 809, 814, 839 P.2d 1223, 1228 (Ct. App. 1992). When a defendant contends that his right to a defense was violated, the trial court must conduct a "two-part inquiry":

> First, the trial court must consider whether the proffered evidence is relevant. If it is not relevant, the defendant has no constitutional right to present it. If the evidence is relevant, the trial court must ask whether other legitimate interests outweigh the defendant's interest in presenting the evidence. Because trial courts have such broad discretion to determine whether prejudicial effect or other concerns outweigh the probative value of the evidence, a defendant's Sixth Amendment rights will be violated only if the trial court abused its discretion.

*Ozuna*, 155 Idaho at 703, 316 P.3d at 115 (citations omitted).

Thus, we must first address whether the evidence that G.O. had been raped by a third person was relevant to Orellana-Castro's defense. Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. We exercise free review in determining the relevance of evidence. *State v. Alsanea*, 138 Idaho 733, 739, 69 P.3d 153, 159 (Ct. App. 2003). A nearly identical issue was addressed in *United States v. Bear Stops*, 997 F.2d 451 (8th Cir. 1993), where the defendant was charged with the aggravated sexual abuse of two boys under age twelve. The government presented evidence that certain psychological symptoms indicated childhood sexual abuse, and the defendant proffered evidence of sexual abuse by a third party as an alternative explanation for the symptoms. Both the trial court and the appellate court held that the evidence of additional abuse was relevant because "without an alternative explanation, the jury may have been led directly to the conclusion that [the defendant] was the perpetrator of the sexual abuse." *Id.* at 454-55.

11

Our decision in *State v. Molen*, 148 Idaho 950, 231 P.3d 1047 (Ct. App. 2010) is also instructive. There, the defendant was charged with lewd conduct and wanted to provide an alternative explanation for the eight-year-old complaining witness's knowledge about sexual matters. The State had elicited testimony from the child's mother from which the jury could have inferred that the child was sexually uninformed. The defendant offered contrary evidence that the child had been exposed by his mother to sexual topics beyond those usually discussed with an eight-year-old. We held that, in view of the State's evidence that the child had been sexually naive before the charged offenses, countervailing evidence to show an alternative means by which the child could have learned about sexual topics could be relevant.

Similarly in this case, the evidence of an alternative source of G.O.'s psychological symptoms was relevant. The State presented no fewer than four expert witnesses to opine that G.O.'s psychological symptoms indicated that she had been sexually abused. After the cross-examination of one of these witnesses in which defense counsel referenced G.O.'s exposure to domestic violence as a possible alternative cause of her symptoms, the State elicited testimony that certain of the symptoms could *only* be explained by sexual abuse. In this circumstance, having placed great emphasis on G.O.'s symptoms to support her allegation of sexual assaults by Orellana-Castro, the State is in no position to contend that Orellana-Castro's evidence of a different sexual assault, as an alternative cause of the symptoms, is irrelevant.

As noted above, even relevant defense evidence may be excluded without violation of the defendant's Sixth Amendment right to present a defense if other legitimate interests outweigh the defendant's interest in presenting the evidence. *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers v. Mississippi*, 410 U.S. 284, 294-95 (1973). Among the other legitimate interests are concerns about "harassment, prejudice, confusion of issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Another central concern is subjecting a child who has been sexually victimized to further difficult questioning about such sensitive matters. *See Bear Stops*, 997 F.2d at 455. It may be possible to ameliorate this concern by limiting the evidence to "only a sanitized version of the sexual assault sufficient to effectuate the purpose for which the evidence was offered." *Id.* However, "restrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Michigan v. Lucas*, 500 U.S. 145, 150 (1991) (quoting *Rock*, 483 U.S. at 56).

In this case, the district court did not reach the Sixth Amendment issue and therefore did not weigh the competing interest implicated by the proffered evidence of the third-party rape of G.O.  If the issue arises at a new trial on remand, this balancing must be conducted by the trial court.

## III.
## CONCLUSION

We conclude that the trial court erred by failing to sever the charges relating to S.O. from the charges relating to G.O. and that this error was not harmless.  Therefore, we vacate the judgment of conviction and remand for further proceedings in the district court.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**