(No. 39111.-▮▮▮▮▮▮▮

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* THOMAS FLEMING, Appellant.

*Opinion filed November 19, 1965.*

STRADFORD, LAFONTANT & LAFONTANT, of Chicago, (JEWEL LAFONTANT, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and WILLIAM A. BOMP, Assistant Attorneys General, and ELMER C. KISSANE and JAMES B. KLEIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The defendant, Thomas Fleming, was indicted in the circuit court of Cook County for unlawful possession of a narcotic drug. At his trial the court denied his motion to suppress certain evidence, and upon a finding of guilty by a jury he was sentenced to a term of 2 to 5 years in the penitentiary. On this appeal he contends that his arrest without a warrant was illegal, and that the evidence obtained incidental thereto was improperly admitted in evidence against him.

Chicago police officer Charles Jackson testified that on December 6, 1963, he was introduced by another police officer to an informer named Tommie Brown. Officer Jackson and the informer had a brief conversation during which defendant's name was mentioned. The informer agreed to

meet officer Jackson at the corner of 63rd and State Streets at 8:00 P.M. three nights later. On December 9, officer Jackson and officer Carl Willis met the informer at the prescribed time and place and drove in a patrol car to the corner of 59th and State streets where they parked beneath the elevated tracks. Brown told the officers that "he knew a man by the name of Fleming who was engaged in selling narcotics in the Shalimar Lounge at 5902 South State Street."

The officers searched the informer's clothing and discovered he had no narcotics in his possession. They then gave him marked paper currency and waited in the patrol car while the informer entered the nearby Shalimar Lounge. About 5 minutes later, the informer came out of the tavern and returned to the patrol car where he delivered to the officers a tin-foil package containing a white powder. No field test was performed on the white powder, although officer Jackson testified that the tin-foil package was "the customary type of package used in the trade of selling narcotics". Brown told the officers that he had purchased the package from defendant. He also gave a description of defendant, and told the officers that defendant was standing at the bar at the west end of the tavern. The informer then departed and was never seen or heard from thereafter.

The officers went into the tavern and saw defendant, who matched the description given by the informer, standing at the place specified by the informer. He was then arrested without a warrant. A subsequent search of his person disclosed the marked paper currency and 16 tin-foil packages, one of which was later found to contain heroin.

Defendant contends that his arrest without a warrant was unlawful and that all evidence discovered in the course of the search incidental thereto should therefore have been suppressed. In particular, he relies upon the statute in effect at the time of his arrest which provides that an arrest may be made "by an officer, when a criminal offense has in fact

been committed, and he has reasonable ground for believing that the person to be arrested had committed it." (Ill. Rev. Stat. 1963, chap. 38, par. 657.) Defendant argues (1) that prior to his arrest there was no field test of the white powder and therefore no evidence that a crime had "in fact" been committed and (2) that there were no facts to give the arresting officers reasonable grounds to believe that defendant had committed the crime.

We do not think the statute here involved requires that the facts must establish with absolute certainty that a crime has in fact been committed before a police officer may make an arrest without a warrant. Seldom, if ever, would such a situation exist. It is enough if the facts are such that a reasonable and prudent police officer could conclude that a crime has been committed and that defendant committed it. *People* v. *La Bostrie,* 14 Ill.2d 617.

Under the circumstances in the case now before us, we do not think that a field test of the white powder was essential to a conclusion that a crime had been committed. (*People* v. *Redding,* 28 Ill.2d 305; *People* v. *Boozer,* 12 Ill.2d 184.) The tin-foil package delivered to the officers by the informer was the customary type of package used by narcotics peddlers. In our opinion this fact, coupled with the informer's statement that he had purchased the package from defendant in the tavern, was sufficient to lead officers Jackson and Willis to the conclusion that the crime of illegal possession of narcotics had been committed.

Defendant further contends that the arresting officers relied entirely on the tip of an unknown informer whose reliability had not been established and that the officers therefore did not have reasonable grounds to believe that defendant had committed the crime. Defendant places reliance on our previous decisions in *People* v. *Pitts,* 26 Ill.2d 395, and *People* v. *Parren,* 24 Ill.2d 572, wherein we held that police officers are not justified in making an arrest

without a warrant solely on the basis of an anonymous informer's tip without some independent corroboration of the accuracy of the tip. The instant case differs, of course, from the *Pitts* and *Parren* cases in that we are not here concerned with a tip from an anonymous source. Here, the officers received their information during a meeting with a known informer. Although there was no testimony that the informer had given accurate tips on previous occasions, there were several factors which, in our opinion, justified reliance on the tip. The informer met the officers by pre-arrangement at a designated time and place. He then went into a tavern where he said defendant was selling narcotics and returned with a tin-foil package of a type used in illicit narcotics traffic. He stated that he had purchased the package from the defendant and gave the officers a complete description of the defendant, including a description of where he was standing in the tavern. When the officers entered the tavern, they saw the defendant who matched the description and who was standing at the place the informer said he would be. Thus, at this point, the informer had kept his word by meeting the officers on the night of December 9, 1963, as previously agreed, had apparently given accurate information that someone was selling narcotics in the Shalimar Lounge, and had given an accurate description of a man whom the officers found inside the tavern. We think that this was enough evidence of the informer's reliability to justify reliance on his statement that defendant was the person who had sold the narcotics.

The facts in this case are substantially identical to those in *People* v. *Redding*, 28 Ill.2d 305, wherein we held an arrest to be valid under circumstances essentially identical to those in this case. We conclude that police officers Jackson and Willis were confronted with sufficient facts from which they could reasonably conclude that a crime had been committed and that defendant had committed it. Defend-

ant's arrest was lawful, and the trial court did not err in denying defendant's motion to suppress the evidence obtained in the course of the search incident to that arrest.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*