(No. 43455.—

THE PEOPLE *ex rel.* Thomas Fleming, Appellant, *vs.* FRANK J. PATE, Warden, *et al.,* Appellees.

*Opinion filed May 21, 1971.*

Ward, J., took no part.

Gerald W. Getty, Public Defender, of Chicago, James N. Gramenos, Assistant Public Defender, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel and Warren K. Smoot, Assistant Attorneys General, and Robert A. Novelle and Bernard Deeny, Assistant State's Attorneys, of counsel,) for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

Thomas Fleming, the relator, appeals directly from an order entered by the circuit court of Cook County on May 11, 1970, which denied his petition for a writ of *habeas corpus.*

On October 16, 1963, in the circuit court of Cook County, the relator was found guilty of the unlawful possession of narcotics and sentenced to imprisonment for not less than two nor more than five years. That judgment was affirmed on November 19, 1965 (*People* v. *Fleming,* 33 Ill.2d 431), and a petition for *certiorari* was denied by the United States Supreme Court on April 4, 1966. (*Fleming* v. *Illinois,* 383 U.S. 967, 16 L. Ed. 2d 309, 86 S. Ct. 1274.) The relator had been released on bail during the proceedings to review his conviction, and his bond was forfeited on April 15, 1966.

The following facts are agreed to by the parties. On May 9, 1966, the relator was arrested in the southern district of Illinois by Federal authorities in connection with a Federal charge pending against him there. That charge was dismissed. However, the Federal authorities also "had a detainer for the relator from the United States District Court in Detroit, Michigan." The relator was removed to the Federal tier of the Cook County jail to await transportation to the eastern district of Michigan.

On June 6, 1966, the relator was brought before the circuit court of Cook County in connection with his 1963 conviction for the unlawful possession of narcotics. The court ordered the *mittimus* to issue at once, saying: "He is under sentence and he is going to start serving his sentence over here. Somebody ought to let the Federal authorities know, and they can decide what they want to do with their indictments over there." On June 23, 1966, the relator was removed from the county jail by a United States Marshal and taken to the eastern district of Michigan. The record is silent as to the procedures used in removing the relator from the county jail.

On October 20, 1966, the relator was found guilty in the eastern district of Michigan of interstate transportation of forged securities and sentenced to five years in the Federal penitentiary. He was immediately incarcerated in the Federal penitentiary in Terre Haute, Indiana, and later transferred to the Federal penitentiary in Marion, Illinois. On June 9, 1969, the relator was paroled by Federal authorities, and he is presently confined in the Illinois State penitentiary.

The relator filed his petition for a writ of *habeas corpus* on April 1, 1970. He contends that "when Illinois surrenders its prisoner to Federal authorities, not only to stand trial but also to serve a Federal sentence, Illinois loses jurisdiction over the prisoner and the right to enforce completion of the State sentence." He also argues that he was denied his

right to have his State sentence run concurrently with his Federal sentence, citing section 1—7(n) of the Criminal Code. (Ill. Rev. Stat. 1969, ch. 38, par. 1—7(n).) The State disputes both these contentions.

The issues presented are similar to those involved in *People ex rel. O'Connor* v. *Bensinger* (Nos. 43712 and 43755 cons.) also decided today. There we held that section 5 of the Uniform Criminal Extradition Act (Ill. Rev. Stat. 1969, ch. 60, par. 22) empowers the Governor to surrender a sentenced prisoner to a demanding State solely for the purpose of standing trial in that State, and does not authorize the Governor to interfere with the service of a judicially imposed sentence by surrendering the prisoner, not just for trial, but also for the purpose of serving whatever sentence the demanding State may impose after the trial there is concluded. In reaching that conclusion we relied upon *People ex rel. Barrett* v. *Bartley* (1943), 383 Ill. 437.

Even more closely in point is *People ex rel. Milburn* v. *Nierstheimer* (1948), 401 Ill. 465. There, as in the present case, the court was confronted with the unauthorized release of a sentenced prisoner to Federal authorities by State officials other than the Governor. And the court held that such a release did not amount to a waiver of jurisdiction and did not entitle a prisoner "to have his discharge as a beneficiary of their failure." 401 Ill. at 470.

The prisoner in *Milburn* relied upon *People ex rel. Barrett* v. *Bartley* and contended that his delivery to the Federal authorities constituted a waiver of jurisdiction. Concerning this claim, the court said (p. 468) : "If his delivery to Federal authorities was in fact made upon a warrant of extradition issued by the Governor, his contention would prevail, under our holding in" the *Bartley* case. The court continued (p. 469) : "In the *Bartley case* we said, however, that 'the waiver of jurisdiction of a State over a fugitive is a prerogative of the Governor.' Here it does not

sufficiently appear from the record that the Governor signed any extradition papers or had anything whatever to do with the steps whereby petitioner was turned over to Federal authorities.  *  *  *  No showing having been made that the Governor authorized his release to Federal authorities, petitioner's contention cannot prevail."

The distinction drawn in the *Milburn* case is a narrow one, which at first glance may appear to be overly technical. Certainly, from the prisoner's perspective, it makes no difference whether he was released from the custody of Illinois authorities by the order of the Governor or by the mistake of some unnamed subordinate; to him, the important fact is that he was released to the other jurisdiction, and not who released him. But other interests are involved, and we think that the distinction is supported by convincing practical considerations. The release of the jurisdiction of a State over an accused person or over a convicted prisoner is a serious matter. The power to waive jurisdiction clearly rests in the Governor, and, as was pointed out in the *Bartley* case, that authority has not been reposed in anyone else. To hold that an error by clerical or custodial personnel can result in the release of jurisdiction over a convicted prisoner is unwarranted, and we adhere to the conclusion reached in the *Milburn* case.

Section 1—7(n) of the Criminal Code provides that an Illinois court, in sentencing a prisoner who is in Federal custody serving an unexpired sentence of imprisonment, may in its discretion order that the sentence it imposes be served concurrently with the previous Federal sentence. In an argument drawn by analogy from that provision, the defendant points out that "(if defendant had been under two Illinois sentences, or if the Federal sentence had been imposed prior to the State sentence) defendant would have been entitled to a ruling on concurrency of sentences under Illinois law." He contends that it would "be unjust to deny him a right to such a ruling merely because the

order of his trials was reversed." In the present case, however, the defendant concedes that the "federal judge in Michigan must have had specific knowledge that defendant was then serving an Illinois sentence, when it sentenced defendant." It was for that court to determine, in fixing the new Federal sentence, what weight should be given to the existing Illinois sentence.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this court.