599 P.2d 855

STATE of Arizona, Appellee,

v.

Frederick Wayne KNAPP, Appellant.

No. 1 CA–CR 3828.

Court of Appeals of Arizona,
Division 1,
Department B.

July 17, 1979.

As Modified on Denial of Rehearing
Aug. 22, 1979.

Review Denied Sept. 18, 1979.

Robert K. Corbin, Arizona Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Division, Asst. Atty. Gen., and Jessica L. Gifford, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Michael G. Sullivan, Deputy Public Defender, Phoenix, for appellant.

## OPINION

OGG, Chief Judge.

On November 22, 1978, the defendant/appellant, Frederick W. Knapp, was convicted by a jury of drawing a check on no account, a felony. On December 4, 1978, the defendant was sentenced to one to four years in prison. It is from that judgment and sentence that this appeal is made.

The defendant raises two issues on appeal: (1) did the state waive jurisdiction to prosecute the defendant on the pending no account charge when it released him to Wyoming authorities pursuant to his waiver of extradition; and (2) was the defendant's right to speedy trial violated by the four-month delay occasioned by the defendant's absence from Arizona while in custody of Wyoming authorities? We hold that the state did not waive jurisdiction and that the defendant's right to speedy trial was not violated.

The facts pertinent to this appeal are not in serious dispute. The defendant was charged through complaint on September 2, 1977 with drawing a check on no account. He made an initial appearance on February 21, 1978. On March 1, 1978, he was released on his own recognizance. However, the sheriff retained custody because there was an outstanding extradition warrant issued on the defendant from Wyoming authorities. On March 2, 1978, the defendant waived extradition without the knowledge of the County Attorney or Governor. The County Attorney then filed an information and arraignment was set for March 17, 1978. The defendant did not appear at arraignment and a bench warrant was issued for his arrest.

On May 27, 1978, the County Attorney received a letter from the defendant in which he learned that the defendant had waived extradition and had been in custody of Wyoming authorities. The defendant demanded a speedy trial pursuant to A.R.S. § 31–481, art. III and waived extradition back to Arizona.

The defendant was returned to Arizona on July 20 and was arraigned on July 24, 1978. Trial was set but continued on the court's own motion to October 23, 1978. The defendant filed on October 11, 1978 a motion to dismiss for lack of speedy trial. The motion was denied. On October 23, the defendant moved for a continuance and pursuant to the motion, trial was set for November 20. Trial began as scheduled and on November 22 the defendant was found guilty by a jury. This appeal followed.

## WAIVER OF JURISDICTION

■ The defendant argues that Arizona waived jurisdiction to prosecute the drawing check on no account charge when it released him to Wyoming authorities pursuant to his waiver of extradition while the Arizona charge was pending. We disagree.

In *People ex rel. Barrett v. Bartley*, 383 Ill. 437, 50 N.E.2d 517, 147 A.L.R. 935 (1943),[1] a defendant was extradited from Illinois by the governor one day prior to being released on parole. Later the defend-

---

1. There is some uncertainty whether Arizona has adopted the *Bartley* rule. *Bartley* was cited in *Walsh v. State ex rel. Eyman*, 104 Ariz. 202, 450 P.2d 392 (1969). However, the court merely distinguished the facts in *Walsh* from *Bartley* and held that the governor does have authority to make agreements that a defendant must be returned to Arizona after extradition to another state. Division Two of this Court has apparently adopted this rule. *See State v. Barlean*, 121 Ariz. 347, 590 P.2d 463 (App. 1979). However, if that rule is applied in this matter, the question must be resolved against the defendant.

ant was extradited back to Illinois, and he challenged the action. The Illinois Supreme Court held that in the absence of an agreement between governors that an extradited prisoner be returned to the original asylum state, the state waives jurisdiction to subject him to further punishment.

We have examined the *Bartley* case and find it is based upon two theories. Under the first, a release by the governor while serving a prison sentence is paramount to a pardon[2]; under the second, the defendant when extradited can no longer be considered a "fugitive" subject to extradition because he has not voluntarily left the jurisdiction. *See In re Whittington*, 34 Cal. App. 344, 167 P. 404 (1917) (reasoning of which apparently adopted by *Bartley*).[3]

The facts in this case clearly fall without the *Bartley* rule. It is difficult to see how there was any action in this case which might be interpreted as a pardon. The defendant *waived* extradition to Wyoming and back to Arizona. In fact, he *demanded* to be returned and speedily tried. There was *no governor involvement.* The defendant voluntarily left the state and voluntarily returned. The more recent Illinois case of *People ex rel. Fleming v. Pate*, 48 Ill.2d 426, 270 N.E.2d 4 (1971), considered a matter similar to that in question. In that case the defendant was released on bail pending appeal. During that time he was incarcerated and turned over to federal authorities. There was no governor involvement in the transfer proceedings nor formal extradition. Later the defendant was returned to Illinois custody. He attempted on review to assert the *Bartley* rule and argued that Illinois waived jurisdiction when he was turned over to federal authorities. The court rejected that argument and held that release to another sovereign without the governor's involvement, though unauthorized, does not waive jurisdiction. The court explained that only the governor has the power to waive jurisdiction. Certainly that rule is even more properly applied in this case. The defendant waived extradition and then demanded to be returned. There was no governor involvement or even county attorney involvement. All of the defendant's actions were voluntary.

■ However, even if the release amounted to a waiver of jurisdiction, and we hold it did not, the defendant's voluntary return to Arizona revested jurisdiction in Arizona. In *Peoples v. State*, 523 P.2d 1123 (Okl.Cr.App.1974), a defendant was released to the federal government. He was later returned to Oklahoma without any Oklahoma action. On appeal the court held that even though the state may have waived jurisdiction when it released the defendant, it reacquired jurisdiction when he was returned. Even more so in this case where the defendant has voluntarily left the jurisdiction and demanded to be returned and tried under statute, we think his request must be honored and the state reacquired jurisdiction.

## SPEEDY TRIAL

■ The defendant asserts that the state violated his right to a speedy trial by failing to bring him to trial within the time limits of Rule 8.2, 17 A.R.S. Rules of Criminal Procedure. We disagree.

---

**2.** This theory may be a legal fiction which might have been proper under the peculiar facts of *Bartley.* But we note that other courts which have adopted the waiver rule have rejected this theory. *See Ex parte Youstler*, 40 Okl.Cr. 273, 268 P. 323 (1928).

**3.** The soundness of the *Whittington* decision has been questioned numerous times. *See, e. g., Gotfried v. Cronin*, Colo., 555 P.2d 969 (1976); *In re Patterson*, 64 Cal.2d 357, 49 Cal. Rptr. 801, 411 P.2d 897 (1966); *Ex parte Jackson*, 97 Okl.Cr. 289, 262 P.2d 722 (Okl.Cr.App. 1953). Sometimes these challenges have been based upon the state's having adopted Section 25B of the Uniform Extradition Act, which has not been adopted in Arizona. However, we tend to agree with the well-reasoned conclusion that a state should not be considered to have waived jurisdiction unless there has been a clear manifestation of an intent to do so. The purpose of extradition is to prevent criminals escaping justice. *See Gottfried v. Cronin.* This case must be resolved against the defendant even in applying the *Bartley* and *Whittington* rules.

The facts show that the defendant made his initial appearance, but prior to arraignment left the jurisdiction with Wyoming authorities. Arraignment had been set for March 17, 1978, but due to the defendant's self-induced absence it was actually held July 24, 1978. There were several other periods of delay in this action; however, it appears that the parties agree that this court need only determine if the time from March 17 to July 24 should have been excluded.

Rule 8.4(a) reads: "Delays occasioned by or on the behalf of the defendant, including, but not limited to, delays caused by . . . the defendant's absence . . . or his inability to be arrested or taken into custody in Arizona" must be excluded from the time computations of Rule 8.2. The comment to that section further makes it clear that such times must be excluded whether *"intentional or not"*.

Our Supreme Court, in *State v. Quinonez,* 119 Ariz. 208, 580 P.2d 346 (1978), applied Rule 8.4 to a situation wherein a defendant was released on his own recognizance and then taken into custody by federal authorities. The issue before the court was whether the time the defendant was out of the state in custody of the federal authorities was excluded under Rule 8 time computations. The Court concluded that since the question of willfulness is not a factor, the defendant's absence was chargeable to him and excluded from the computation.

Similarly in this case the defendant had been released on his own recognizance, but was retained on the Wyoming extradition. He waived extradition and was absent from the state and could not be arrested. Since willfulness is not a factor, the time must be excluded. We hold the defendant's trial was held within the time limitations of Rule 8.

■ The defendant also claims that by reason of the length of delay, his constitutional right to due process was violated. In balancing the factors outlined in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we find that the right has not been violated.

The length of delay in this case was minimal and the case was brought to trial within the time limits set by statute. The delay was not caused by any bad faith on the part of the state. Rather, the state acted within a reasonable time and in good faith in bringing the defendant back to Arizona when the County Attorney learned of his whereabouts. *See Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). In fact, the County Attorney acted promptly and within the time limits set forth in Rule 8.3 upon receiving the defendant's demand for speedy trial.

The defendant argues that he was prejudiced because three important aspects of his proof, which could have shown that the defendant did not make the no account check with an intent that it be cashed and to defraud, were impaired due to the length of delay from the time he was charged until actually tried. These three aspects to which he refers concern the availability of business records and witnesses.

We have reviewed the record, and it is clear that the defendant has not shown that the victim's business and bank records were unavailable due to the delays. The defendant subpoenaed the records on the Friday before trial. Trial was held on Wednesday. The victim attempted during this short time to secure the subpoenaed records, but his bookkeeper, who had possession of them, was unavailable.

■■ Further, the defendant "speculated" that he would call his former wife as a witness. We note that in all trials there is some impairment of memory due to delay, however, bare assertions of such impairment are insufficient to show prejudice. *See Saiz v. Eyman,* 446 F.2d 884 (9th Cir. 1971). Also the defendant asserts that a mechanic who could corroborate some of his story was no longer available. The mere allegation that a witness is unavailable does not show prejudice. *See Saiz v. Eyman.* However, it is doubtful that this mechanic, who was not employed by the victim nor involved in the transactions, could have added pertinent testimony.

It is clear upon examining the record that the trier of fact was fairly presented with the facts upon which to make its decision. *See State v. McDonald*, 111 Ariz. 159, 526 P.2d 698 (1974). The defendant extensively cross-examined the victim, who corroborated much of the defendant's story. It is doubtful that the records or witnesses could have added anything to the important question of what occurred between the defendant and the victim.

Balancing the above factors, we conclude that the defendant's right to speedy trial was not violated. *Barker v. Wingo.*

The judgment and sentence of the trial court are affirmed.

SCHROEDER, P. J., and JACOBSON, J., concur.