629 P.2d 702

**STATE of Idaho, Plaintiff-Appellant,**

v.

**Lloyd Ernest HOLTSLANDER, Defendant-Respondent.**

No. 13264.

Supreme Court of Idaho.

June 5, 1981.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Howard Carsman, Deputy Attys. Gen., Boise, for plaintiff-appellant.

Klaus Wiebe, Ada County Public Defender, Thomas R. Morden, Boise, for defendant-respondent.

DONALDSON, Justice.

This is an appeal by the State of Idaho from a district court's granting of defend-

ant's Motion to Dismiss the charge of unlawful delivery of a controlled substance, marijuana, in violation of I.C. § 37–2732. The Motion to Dismiss was granted on the ground that the defendant was denied his constitutional right to a speedy trial. We reverse and remand.

An undercover detective alleges that on April 26, 1977, that the defendant was introduced to him as "Lloyd" at Harry's Tavern in Boise. From Harry's Tavern, the detective accompanied the defendant to an apartment where the defendant allegedly sold him marijuana. Following standard undercover procedure, the detective did not ask the defendant for his last name.

On July 20, 1977, a criminal complaint was filed charging "JOHN DOE AKA LLOYD, a white male adult" with delivery of a controlled substance pursuant to I.C. § 37–2732. After securing a warrant for defendant's arrest, the detective made several unsuccessful attempts to locate the defendant or obtain his last name including attempting to contact his roommate, returning four or five times to the apartment where the alleged sale occurred, and checking with the power and phone companies. Although the detective saw the defendant driving around town at various times, he was unable to stop him to execute the warrant.

Being unable to locate the defendant, the detective, whose normal duties did not include serving warrants, turned the warrant over to the warrant division of the sheriff's office. In April 1978, approximately nine months after the filing of the complaint, the detective recognized and arrested the defendant.

During the twelve months between the date of the alleged sale and defendant's arrest, defendant lived in Ada County but moved four times. Defendant testified that from April through July, 1977, he lived at 655 White Cloud Drive # 1, Boise, the scene of the alleged sale. Furthermore, the defendant testified that he was continuously present in Ada County during this entire period with the exception of four or five days during the Christmas vacation. During this twelve-month period, defendant received three traffic citations, spending a night in jail for one of them.

On June 19, 1978, Holtslander appeared before a magistrate for preliminary hearing and was bound over to district court. Following three continuances granted to provide Holtslander more time to obtain private counsel, trial date was set for October 27, 1978. The trial was continued until December 8, 1978, due to conflicts in the court's schedule and lack of contact between defendant and his counsel. On November 29, 1978, defendant moved to dismiss on the ground that his right to a speedy trial had been violated by the nine-month delay between the filing of the complaint and his arrest. His motion was heard on December 18, 1978, and granted by a memorandum opinion of the district court filed December 21, 1978. The State of Idaho appeals and the only question presented is whether defendant-respondent was deprived of his constitutional right to a speedy trial by the nine-month delay between the filing of the complaint and his arrest.

Idaho's Constitution, art. 1, § 13, provides in part:

"In all criminal prosecutions, the party accused shall have the right to a speedy and public trial; * * *"[1]

This Court in *State v. Lindsay*, 96 Idaho 474, 475, 531 P.2d 236, 237 (1975) stated:

"The right of speedy trial as guaranteed by a state constitution or statute cannot be said to be necessarily identical to that right to speedy trial guaranteed in the Constitution of the United States. We find, however, that the 'balancing test' laid down in *Barker v. Wingo*, 407

---

1. The Sixth Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, * * *"

This Sixth Amendment right to a speedy trial is applicable to and binding upon the states through the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) is consistent with decisions of this court stating that whether one has been deprived of his right to a speedy trial must be decided by reference to considerations in addition to the mere passage of time. *Hadlock v. State*, 93 Idaho 915, 478 P.2d 295 (1970); *Ellenwood v. Cramer*, 75 Idaho 338, 272 P.2d 702 (1954).

"In *Barker*, the U.S. Supreme Court recognized that speedy trial cases must be dealt with on an *ad hoc* basis, held that a balancing test was the appropriate method to approach speedy trial questions and set forth four factors [2] determinative of whether a speedy trial had been denied. Those factors were—length of delay, reasons for the delay, the accused's assertion of his right, and prejudice to the accused occasioned by the delay. It was also stated in *Barker* that the length of delay is said to be a 'triggering mechanism' for the invocation of judicial scrutiny."

### LENGTH OF DELAY

In *Barker, supra* 407 U.S. at 530–31, 92 S.Ct. at 2192, 33 L.Ed.2d at 117, the U.S. Supreme Court stated:

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." (footnote omitted).

It is apparent that length of delay serves a dual role in the analysis of the right to a speedy trial. First, the length of delay is used as a screening device to dispose summarily of frivolous claims. Second, the length of delay is one of the factors to be considered when the balancing process has been triggered by a delay that causes actual prejudice or is long enough to be presumptively prejudicial.

■ The initial question in analyzing length of delay for either of its roles is how to measure the delay. Both the U.S. and the Idaho Constitutions indicate that the right of speedy trial arises for an "accused." U.S.Const. amend. VI, Idaho Constitution, art. 1, § 13; *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The U.S. Supreme Court in *Marion, supra,* focused its attention on the use of the word "accused" as used in the Sixth Amendment. The Court stated:

"[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *Id.* at 320, 92 S.Ct. at 463, 30 L.Ed.2d at 479.

Although the language quoted above appears straight forward enough, courts have disagreed over its exact meaning. This language may reflect only a dissimilarity in language between jurisdictions. But the phrase "holding to answer" is generally accepted to refer in a technical sense to the decision of a magistrate to bind a defendant over for trial following a preliminary hearing. *People v. Hannon*, 19 Cal.3d 588, 138 Cal.Rptr. 885, 564 P.2d 1203 (1977). Therefore, the U.S. Supreme Court may have been holding that the filing of a complaint is by itself insufficient to trigger the protection of the right to a speedy trial under the federal constitution.

■ It is an elemental principle of our system of federalism that ultimate responsibility for interpretation of the federal constitution rests with the U.S. Supreme Court. Thus, the holding in *Marion* delineating the scope of protection afforded by the Sixth Amendment's guarantee of the right to a speedy trial is binding on this Court as it is on all other state and federal courts of this

---

**2.** It should be noted that each of the *Barker* factors involves primarily factual inquiries, so that the decision of the trial court granting a dismissal is entitled to great weight.

nation. However, the U.S. Supreme Court's decision in *Marion* did not, and indeed could not, determine the constitutional requirements of the right to a speedy trial guaranteed by the Idaho Constitution.

 This Court has held that the Idaho speedy trial constitutional protection is not "necessarily identical to that right guaranteed in the Constitution of the United States" and comes into play no later than the time at which the complaint is filed, herein July 20, 1977. *State v. Lindsay, supra*, 96 Idaho at 475, 531 P.2d at 237. Therefore, accusation for the Idaho speedy trial constitutional provision occurs either when formal charges are filed or when the defendant is arrested, whichever occurs first. *See State v. Lindsay, supra; State v. Wilbanks*, 95 Idaho 346, 509 P.2d 331 (1973); *Jacobson v. Winter*, 91 Idaho 11, 415 P.2d 297 (1966).[3]

Although *Lindsay, supra*, indicates that the period of delay starts with accusation and ends with trial, it does not clarify how defense-caused delay should be used in the calculation of length of delay. In the case at bar, the trial court held that defendant's motion was based solely on the approximately nine-month delay between the complaint and arrest. The pre-accusatory delay and the delay following arrest were not asserted by defendant as an infringement of his rights or relied upon by the trial court as a basis of its opinion. The post-arrest delay was primarily a function of four continuances. The first three continuances were granted to defendant so that he could obtain private counsel. The fourth continuance was granted due to conflicts in the court's schedule and to provide defendant time to confer with his counsel.

The exclusion of defense-caused delay may have the advantage of making the balancing test less complex by reducing the

amount of information to be considered. But it also has the disadvantage of shortening the length of delay and, therefore, weakening the presumption of prejudice for the triggering mechanism. The greater the length of delay, the greater the presumption of prejudice for triggering the balancing test. Since the trial court found the nine months to be presumptively prejudicial, the disadvantage did not arise in this case. Normally, the best approach to avoid this disadvantage is to count defense-caused delays in the period of delay and then to weigh the factor of reason for delay against the defendant for that portion of delay that is defense-caused. This approach has the advantage of insuring that no defendant's right to a speedy trial will be infringed without triggering the balancing of the appropriate factors. At the same time, it maintains the appropriate weight on length of delay in the balancing process.

Another length of delay question is the application of the "presumptively prejudicial" language of *Barker*. The usefulness of the presumption of prejudice is primarily limited to the "triggering" role of length of delay. The presumption serves a purpose in the length of delays triggering role by providing a means for screening frivolous cases. Without a showing of actual prejudice or a presumption of prejudice, further inquiry into the infringement of a defendant's right to a speedy trial is cut off. However, the usefulness of the presumption is considerably more limited in the balancing process. The role of the presumption in the factor of prejudice is discussed *infra*.

### REASON FOR DELAY

In *Barker, supra*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117, the U. S. Supreme Court stated:

---

3. This Court in *State v. Powers*, 100 Idaho 614, 615, 603 P.2d 569, 570 (1979), stated that "the guarantee of a speedy trial does not extend to the period prior to arrest." However, *Powers, supra*, was not concerned with a delay between the filing of a complaint and the arrest since the defendant in that case was arrested the day after the complaint was filed. Instead, the

Court's attention in *Powers, supra* at 615, 603 P.2d at 570, was focused on a "six month delay between the occurrence of the alleged sale and the filing of the complaint...." *Powers, supra*, did not intend to and does not change the law as to when a person becomes an "accused" for the Idaho speedy trial constitutional provision.

"[D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." (Footnote omitted.) The U. S. Supreme Court in *Barker* has drawn a distinction between neutral reasons for delay, valid reasons for delay, and deliberate delays aimed at hindering a defendant's defense. In the case at bar, there is no contention by Holtslander (and we find no evidence) that the delay was caused by dilatory tactics or deliberately caused to hinder Holtslander's defense. Instead, the nine-month delay was due to a reason that is either "more neutral" or "valid" according to the *Barker* standards. The reason for delay in this case was that the police were unable to locate the accused because they did not know his full name even though they had made several attempts to locate the defendant and obtain his name.

■ An issue raised in this case in determining whether or not this factor is to be weighed against the state is what standards should be used to evaluate the police efforts to locate the defendant. The trial court stated that since it was not persuaded that the police used its "best efforts" in obtaining the defendant's true name or in determining his whereabouts, the delay was unreasonable. Therefore, this factor was weighed against the state. Implied in the trial court's standard is the requirement that the police perform to its highest degree

and take all of the most desirable actions possible in locating the defendant. We hold that the "best efforts" standard is too rigorous. Instead, the state's duty is to make a diligent, good-faith effort to bring the defendant to trial. *See Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *Richerson v. State*, 91 Idaho 555, 428 P.2d 61 (1967). This standard only requires the police to take reasonable actions to locate the defendant.

■ In applying this standard, we recognize that it is ultimately the state's burden to provide a speedy trial while the accused's responsibility for procuring a speedy trial is limited to his assertion of his right[4] and his responsibility not to obstruct the orderly processes of justice. At the same time, we recognize with the diligent, good-faith standard that there are reasonable limits on the state's responsibilities. These considerations can be fully assessed with the balancing test, in which the conduct of both the state and the defendant are weighed.

### ASSERTION OF THE RIGHT

In *Barker, supra*, 407 U.S. at 531–32, 92 S.Ct. at 2192–93, 33 L.Ed.2d at 117–18, the U. S. Supreme Court stated:

"Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived

4. We agree with the U. S. Supreme Court's position stated in *Barker, supra*, 407 U.S. at 528, 92 S.Ct. at 2191, 33 L.Ed.2d at 116–17:

"We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think

the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application." (footnote omitted).

of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."

This factor also relates directly to the "second difference between the right to a speedy trial and the accused's other constitutional rights" recognized by *Barker, supra* at 521, 92 S.Ct. at 2187, 33 L.Ed.2d at 111. That difference is that deprivation of the speedy trial right may work to the accused's advantage by the state's witnesses becoming unable to testify because of fading memories or unavailability. Rather, a defendant's assertion of his right to a speedy trial may reflect whether or not a defendant actually wanted a speedy trial.

■ In the case at bar, the defendant became aware of the charge against him by virtue of his arrest in April, 1978, and did not file his motion until November 29, 1978, approximately seven months later. At least part of this delay occurred while the defendant was locating counsel to represent him. The trial court held that under these circumstances that the defendant did not wait an undue length of time before asserting his right. We recognize that an accused not represented by counsel may not even be aware of his right to a speedy trial or the procedure for obtaining one and, in those circumstances, the defendant's failure to demand a speedy trial should not weigh against him. We also recognize that this is a difficult factor to analyze and should be given weight according to the circumstances of the case. For example, an aware defendant, who desires to delay his trial in hopes of creating an inability of the state's witnesses to testify because of a fading memory or unavailability, may also delay obtaining counsel in hopes of improving his chances to obtain relief through a motion to dismiss for denial of speedy trial.[5] Defendant's delay in obtaining counsel in such a case should be weighed against him.

## PREJUDICE

In *Barker, supra*, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118, the U.S. Supreme Court stated:

"Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." (footnote omitted).

In the case at bar, the nine-month delay includes no pretrial incarceration time. Likewise, the second consideration is of little or no effect since the accused was not even aware of the complaint until the delay period expired at his arrest. Therefore, our main concern becomes a determination as to whether or not appellant's defense was impaired by the delay. At the hearing on the Motion to Dismiss, Holtslander testified that he was not aware of any defense witnesses that had died or moved away and that his presentation of his defense was not affected by the delay. There is no evidence that Holtslander's ability to present the defense was impeded by the delay.

The trial court stated that Holtslander's testimony was "helpful but not determinative." Then the trial court cited *Olson v. State*, 92 Idaho 873, 452 P.2d 764 (1969) and

---

5. Although we are aware of procedural safeguards to minimize such attempts, we also recognize as the U. S. Supreme Court did in *Barker, supra* at 521, 92 S.Ct. at 2187, 33 L.Ed.2d at 111, that sometimes the prosecution's case may be seriously weakened by delays in spite of such safeguards. The record before us does not indicate whether or not this example is applicable in the case at bar.

*Richerson v. State*, 91 Idaho 555, 428 P.2d 61 (1967) for the proposition that prejudice could be presumed if the defendant can show an unreasonable delay in prosecution. Based on its application of the "best efforts" standard, the trial court held that an unreasonable delay had occurred between the filing of the complaint and Holtslander's arrest. Therefore, prejudice was presumed.

■ While we agree that "[l]oss of memory . . . is not always reflected in the record because what has been forgotten can rarely be shown," *Barker, supra* at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118, we also caution against the use of a presumption of prejudice in cases such as the one at bar where there is no indication of prejudice nor claim of prejudice by the defendant. The delay in this case does not, of itself and in comparison with other cases, appear to be inordinate, particularly in view of the reason for delay. In the instant case, any possible prejudice by the nine-month delay is speculative at best. This speculativeness warrants the limiting of the weight, if any, given to the presumption. The balancing test allows enough flexibility in considering the various factors without presuming prejudice from circumstances like those of this case. A defendant's constitutional right to a speedy trial cannot be established by any inflexible rule but can be determined only on an *ad hoc* balancing basis, in which the conduct of the prosecution and that of the defendant are weighed. *Barker, supra* at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 116–17.

■ We take note that the U. S. Supreme Court in *Moore v. Arizona, supra*, 414 U.S. at 26, 94 S.Ct. at 189, 38 L.Ed.2d at 185, held that *Barker* expressly rejected "the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial." We agree that in cases where inquiry into impairment of defenses is necessary as here, it would be harsh to require proof with certainty. However, we also recognize that prejudice is a central factor in analyzing the right to speedy trial. We hold that where a defendant does not even attempt to make a showing of a reasonable possibility of prejudice, then this factor should be given a very light weight, if any, for the defendant.

## BALANCING

■ We agree with the U. S. Supreme Court in *Barker, supra*, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118–19, that:

"We regard none of the four factors identified above [length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant] as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." (footnote omitted).

Since each of the factors considered involves primarily a factual inquiry, it is appropriate in this case that we reverse and remand to the trial court to reassess the Motion to Dismiss under the standards as herein expressed.

Reversed and remanded.

McFADDEN, J., and SCOGGIN, J. Pro Tem., concur.

SHEPARD, Justice, specially concurring.

I concur in the result obtained by the majority in the instant case. However, I deem it necessary to express my disapproval of the overly broad language of the majority as it relates to the interpretation of the Idaho Constitution in determining the point in time at which Idaho's speedy trial constitutional guarantee "comes into play." The majority correctly indicates that the speedy trial guarantee of Idaho's Constitution is not necessarily identical to that right

guaranteed in the Constitution of the United States. The majority further correctly indicates that this Court in *State v. Lindsay*, 96 Idaho 474, 531 P.2d 236 (1975), has stated that the speedy trial guarantee under the Idaho Constitution "comes into play no later than the time at which the complaint is filed, * * * ". *Lindsay*, in turn, was purportedly based on *State v. Wilbanks*, 95 Idaho 346, 509 P.2d 331 (1973); *Richerson v. State*, 91 Idaho 555, 428 P.2d 61 (1967); *Jacobson v. Winter*, 91 Idaho 11, 415 P.2d 297 (1966).

The majority here notes that the appellant's principal argument is that he was denied a speedy trial because of the unwarranted delay between the filing of a John Doe complaint and the arrest of the appellant some nine months thereafter. In my judgment, the record sustains the majority in its conclusion that law enforcement authorities did not know the appellant by any other name except "Lloyd" and had attempted to locate him during that interval of time. I agree with the majority in its rejection of the "best efforts" standard of the law enforcement activities as applied by the trial court. Nevertheless, I find no necessary requirement in our prior cases interpreting the Idaho Constitution to require the application of a speedy trial question *merely* because a complaint has been filed.

It is true that such language is contained in *Lindsay*: "Herein the time for computing the delay begins on February 14, 1972, *the date of issuance of the complaint.*" *Id.* 96 Idaho at 476, 531 P.2d at 238 (Emphasis added.). *Wilbanks, supra; Richerson, supra*; and *Jacobson, supra*, were all cited as authority for that statement.

In *Lindsay*, however, a complaint had issued in February of 1972 and the defendant's initial court appearance in Idaho was not made until February, 1973. In the interim, however, Lindsay had been taken into custody in Utah on three different occasions.

As previously stated, one of the cases relied upon for the overly broad and unnecessary statement in *Lindsay* was *State v.*

*Wilbanks, supra.* In *Wilbanks* a unanimous court rejected appellant's claim that the speedy trial guarantee applied to pre-accusation delays. Wilbanks, during all of the pre-complaint and post-complaint delay, was incarcerated in either a county or federal institution. The *Wilbanks* court again used what I deem to be unfortunate and overly broad language, stating that "the relevant period for measuring the State's delay in bringing a case to trial begins to run at the time of filing of a criminal complaint." *Id.* 95 Idaho at 350, 509 P.2d at 335, citing *Jacobson v. Winter, supra*, as authority therefor.

In *Richerson v. State, supra*, a unanimous court, in denying a petition for rehearing, stated that the filing of a "complaint" was sufficient initiation of proceedings to trigger the speedy trial provisions of Idaho's Constitution, but the court specifically noted therein that there the defendant was incarcerated in a federal institution and that the Idaho law enforcement authorities had placed a "hold" on Richerson to require his return to Idaho at the expiration of his federal incarceration. Richerson, during his federal incarceration, had filed a motion in the Idaho courts for a speedy trial on the Idaho charge. As stated by the court, "[T]his appeal presents for resolution the question whether following request for a speedy trial by an accused, the refusal of the state to initiate procedures under 18 U.S.C.A. § 4085 for return of the accused, who is an inmate in a federal correctional institution, to this state for trial on a criminal charge deprives such accused of his right to a speedy trial * * *." *Id.* 91 Idaho at 555, 428 P.2d at 61. The court again referred to its earlier case of *Jacobson v. Winter, supra.*

I come then to *Jacobson v. Winter, supra*, which appears to be the root opinion in Idaho establishing the so-called rule that Idaho's speedy trial constitutional protection is triggered at the time of the filing of a complaint. Again, the *Jacobson* court, without any analysis, merely stated the rule as "a party is accused when a criminal

complaint is filed against him."[1] *Id.* 91 Idaho at 14, 415 P.2d at 300. However, Jacobson was serving time in the Idaho State Penitentiary when a criminal complaint was filed against him. County law enforcement officials placed a "hold" with penitentiary officials which would have required that Jacobson be delivered to the county officials upon the termination of his incarceration in the penitentiary. Jacobson, while still in the penitentiary, made his demand for a speedy trial on the charges which are the subject of the complaint. Hence, I see the factual situation in *Jacobson* as distinguishable from the circumstances of the instant case. The court in *Jacobson* stated, "The trial court was correct in its analysis of this issue, that the time should be determined from the filing of the original complaint *when the accused is incarcerated within the jurisdiction of this state and his whereabouts are known to the prosecuting authorities.* When the whereabouts of the accused are unknown, the time should be considered at least from the time the prosecuting authorities obtain knowledge of the accused's whereabouts, when he is within the jurisdiction of this state, whether incarcerated or not." *Id.* (Emphasis added.)

In sum, it is my opinion that the overly broad rule of *Jacobson v. Winter, supra,* and its progeny should be restricted to circumstances similar to *Jacobson.* In circumstances such as the instant case where the defendant had not been arrested, was not in custody and his whereabouts were unknown to the prosecuting authorities the speedy trial provision of the Idaho Constitution should not be triggered at the time of the filing of a complaint.

1. The only authority cited by the court is two decisions of the California Supreme Court, neither of which furnish a basis for such a broad rule.

1. The Court states "that each of the *Barker* factors involves primarily factual inquiries, so that the decision of the trial court granting a dismissal is entitled to great weight." I agree, and add thereto that the balancing process itself

BISTLINE, Justice, dissenting.

The issue before us, as acknowledged by the Court's opinion, is whether the trial court's granting of the motion to dismiss[1] was an abuse of discretion to the point of reversible error. The Court, so it seems to me, goes to great length in finding fault with the district court's application of the *Barker* factors in only two instances: (1) with that court's statement that the police did not use their "best efforts" to locate the defendant, and (2) with that court's analysis of the prejudice factor. I find no error in either.

One who reads the Court's opinion without access to the trial court's memorandum opinion might conclude that the trial court was totally unaware of *Barker v. Wingo* and the meaning and application of its four balancing factors. An examination of the trial court's opinion shows not only that the trial court fully understood these factors, but also that it did not act improperly in granting the motion to dismiss.

The trial court first dealt with the length of the delay, finding that under the circumstances of this case the nine month delay between the filing of the complaint and the arrest was sufficient "to trigger judicial inquiry and scrutiny of the defendant's right to speedy trial." This was primarily a factual question for the trial court, and one with which an appellate court ought not interfere. *See e. g., Paine v. McCarthy,* 527 F.2d 173 (9th Cir. 1975), cert. denied 424 U.S. 957, 96 S.Ct. 1437, 47 L.Ed.2d 363 (1976) (ten month delay); *United States v. Fay,* 505 F.2d 1037 (1st Cir. 1974) (nine month delay); *State v. Ivory,* 278 Or. 499, 564 P.2d 1039 (1977) (ten and a half month delay); *State v. Willingham,* 13 Or.App. 504, 510 P.2d 1339 (1973) (seven month delay).

self is initially committed to the trial court to which this Court should properly defer except where the trial court is shown to have misapplied the law. *See State v. Dalrymple,* 99 Idaho 827, 589 P.2d 979 (1979) (no abuse of discretion in dismissing criminal complaint on grounds of speedy trial violation). *See also State v. Burns,* 43 Or.App. 937, 607 P.2d 735 (1979).

As to the reason for the delay, the trial court made well reasoned findings:

"The reason for the delay was disclosed by the testimony of Officer Cortez at the hearing on the motion to dismiss. The officer simply did not know the accused's full name and was unable to locate him personally until in April, 1978. The defendant himself did nothing to occasion that delay.

. . . .

". . . I am not persuaded that the officers used their best efforts in obtaining the true name of the defendant, nor determining his whereabouts, in light of his testimony that he remained in the general area. I find that the delay was unreasonable and not justified."

The prosecutor, in arguing a motion to reconsider, stated:

"Your Honor, I thought some of the things pointed out by the court in the memorandum opinion, I think the bottom line was that it felt that the police did not make *reasonable efforts* to locate and arrest Mr. Holtslander." (Emphasis added.)

In denying the state's motion, the court noted the following:

"I realize that the factual situation here where the officer wanted to stay undercover and not let Mr. Holtslander know they were really looking for him was to their advantage because they could continue on with their narcotic surveillance and arrest without becoming known. It is just one of those gambles that they took in this particular case and it resulted in prejudice to Mr. Holtslander.

"One thing I didn't mention in the opinion, Mr. Dutcher, and that was a curious situation. I believe it was Officer Carr (sic—Cortez) testified that he knew Mr. Holtslander by the name of "Lloyd" quite well. Perhaps this was because they had seen him a number of times at the same bar where they finally made the buy from him and then decided to get the warrant for his arrest, and this was never answered in the evidence, it was just a matter of something curious in my mind. I wondered why, if they knew an individual frequented a certain location long enough that they would get to know him and buy some narcotics from him that, they weren't able to go back to that same location and find him again. I just couldn't quite believe that Mr. Holtslander after he made this sale stopped going to the same neighborhood bar that he was used to going to when he was not aware that anyone was going to arrest him.

. . . .

"I did give this a considerable amount of thought, Mr. Dutcher, and I certainly[2] am not trying to throw road blocks in the way of the police in this area in trying to curtail the narcotics activities, but I think *in this particular case they just didn't go about it in a proper enough fashion* to also accord the defendant some sort of a semblance of defense in being able to prepare his own case, so I'm going to deny the motion to reconsider." (Emphasis added.)

The Court's statement that "[i]mplied in the trial court's standard is the requirement that the police perform to its highest degree and take all of the most desirable actions possible in locating the defendant" is not substantiated, as the statement by the prosecutor well shows. To the contrary, read in context, the trial court imposed only a requirement of due diligence, a requirement it found the police did not meet. It simply cannot be said that the trial court was imposing the highest degree of diligence on the police. The police did have an address (an address which appeared on Holtslander's driver's license), they did talk to his roommate, they did know the bar he frequented, but they were unable to get a last name and locate him. As noted by the trial court, Holtslander made no attempt to conceal his whereabouts. An examination of cases from other jurisdictions that have held the delay to be unjustified, e. g., *Jones v. Superior Court*, 3 Cal.3d 734, 91 Cal.Rptr. 578, 478 P.2d 10 (1970); *State v. Ivory*, 278 Or. 499, 564 P.2d 1039 (1977); *State v. Willingham*, 13 Or.App. 504, 510 P.2d 1339

(1973), and justified, *e. g., People v. Hannon*, 19 Cal.3d 588, 138 Cal.Rptr. 885, 564 P.2d 1203 (1977); *People v. McDaniels*, 53 Misc.2d 611, 279 N.Y.S.2d 574 (County Ct. 1967); *Petschauer v. Sheriff*, 89 Nev. 328, 512 P.2d 1325 (1973), shows only that the circumstances of each case so differ one from the other that each case must be decided on its own facts. Perhaps the facts of this case present a close question, upon which a different trial judge might have ruled otherwise. Even so, it cannot be said that this trial court, which was the finder of fact, erred in finding that the delay was not reasonable.

The third factor considered by the trial court is the assertion by the defendant of his right to a speedy trial. Here the trial judge was well aware that seven months had elapsed before defendant asserted his right, but observed also that part of that time passed while defendant was acquiring counsel: "[u]nder the circumstances I cannot find that the defendant waited an undue length of time before testing the speedy trial issue ...." This was a trial court's factual determination. *See Estrada v. State*, 611 P.2d 850 (Wyo.1980) (failure to assert right largely mitigated by fact that counsel was not appointed for eight months).

The final factor to be considered is that of prejudice. The court, after noting that defendant did not assert any actual prejudice, stated the following:

"Here the defendant was arrested one year after the alleged offense. No doubt the law enforcement personnel had the State's case prepared at the time the complaint was filed, less than three months after the incident. Now in all fairness, can we expect the defendant, in light of a years delay caused by the officers, to properly prepare his defense at the time of his arrest, locating and interviewing witnesses, attempting to recall facts, times, dates, places and people, a year after the commission of the crime? I think not, this hindrance could result in nothing but prejudice to the defendant."

In so holding, the court cited three cases for the proposition that prejudice may be presumed where there is an unreasonable delay. *Olson v. State*, 92 Idaho 873, 452 P.2d 764 (1969); *Richerson v. State*, 91 Idaho 555, 428 P.2d 61 (1967); *Jones v. Superior Court*, 3 Cal.3d 734, 91 Cal.Rptr. 578, 478 P.2d 10 (1970). As stated in *Jones*, and quoted by the trial court:

"Petitioner was clearly prejudiced. The most obvious prejudicial effect of the long prearrest delay was to seriously impair his ability to recall and to secure evidence of his activities at the time of the events in question. 'Delaying the arrest of the accused may hinder his ability to recall or reconstruct his whereabouts at the time the alleged offense occurred. As stated by the dissent in *Powell v. United States*, 122 U.S.App. D.C. 229, 352 F.2d 705, 710, "The accused has no way of knowing, to say nothing of proving, where he was at the time and on the day the policeman says his diary shows he made a sale of narcotics to the policeman" ' (*People v. Wright*, supra, 2 Cal.App.3d 732, 736, 82 Cal.Rptr. 859, 861.) Although petitioner knew in June 1968 that the police suspected him of a narcotics offense, he did not know when or how they believed the crime was committed, and since at this state of the proceedings the case has not been tried and he must be presumed to be innocent, we cannot assume that he knew the details of the crime charged from his commission of it .... Petitioner was not in hiding and his whereabouts could have been discovered by a routine, uncomplicated investigation. In far less time than 19 months he could have reasonably assumed that the police no longer had an interest in him.

"The delay was clearly unreasonable. It advanced no proper police purpose. The 'buy program' was completed and formal charges had been filed. No additional witnesses were being sought, and petitioner could have readily been promptly located and arrested." *Id.* 478 P.2d at 14.

Justice Brennan expressed similar sentiments in *Dickey v. Florida*, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970):

"Although prejudice seems to be an essential element of speedy-trial violations, it does not follow that prejudice—or its absence, if the burden of proof is on the government—can be satisfactorily shown in most cases. Certainly, as the present case indicates, it can be established in some instances. It is obvious, for example, if the accused has been imprisoned for a lengthy period awaiting trial, or if the government has delayed in clear bad faith. But concrete evidence of prejudice is often not at hand. Even if it is possible to show that witnesses and documents, once present, are now unavailable, proving their materiality is more difficult. And it borders on the impossible to measure the cost of delay in terms of the dimmed memories of the parties and available witnesses. As was stated in *Ross v. United States*, 121 U.S.App. D.C. 233, 238, 349 F.2d 210, 215 (1965): '[The defendant's] failure of memory and his inability to reconstruct what he did not remember virtually precluded his showing in what respects his defense might have been more successful if the delay had been shorter. * * * In a very real sense, the extent to which he was prejudiced by the Government's delay is evidenced by the difficulty he encountered in establishing with particularity the elements of that prejudice.' . . . .

"Despite the difficulties of proving, or disproving, actual harm in most cases, it seems that inherent in prosecutorial delay is 'potential substantial prejudice,' *United States v. Wade*, 388 U.S. 218, 227, 87 S.Ct. 1926 [1932] 18 L.Ed.2d 1149 (1967), to the interests protected by the Speedy Trial Clause. The speedy-trial safeguard is premised upon the reality that fundamental unfairness is likely in overlong prosecutions. We said in *Ewell, supra*, 383 U.S. [116] at 120, 86 S.Ct. [773] at 776 [15 L.Ed.2d 627] that the guarantee of a speedy trial 'is an important safeguard * * * to limit the possibilities that long delay will impair the ability of an accused

to defend himself,' and Judge Frankel of the District Court for the Southern District of New York has stated that 'prejudice may fairly be presumed simply because everyone knows that memories fade, evidence is lost, and the burden of anxiety upon any criminal defendant increases with the passing months and years.' *United States v. Mann*, 291 F.Supp. 268, 271 (1968).

"Within the context of Sixth Amendment rights, the defendant generally does not have to show that he was prejudiced by the denial of counsel, confrontation, public trial, and impartial jury, knowledge of the charges against him, trial in the district where the crime was committed, or compulsory process. Because potential substantial prejudice inheres in the denial of any of these safeguards, prejudice is usually assumed when any of them is shown to have been denied. Because concrete evidence that their denial caused the defendant substantial prejudice is often unavailable, prejudice *must* be assumed, or constitutional rights will be denied without remedy. Prejudice is an issue, as a rule, only if the government wishes to argue harmless error. See *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). When the Sixth Amendment right to speedy trial is at stake, it may be equally realistic and necessary to assume prejudice once the accused shows that he was denied a rapid prosecution." *Id.* 398 U.S. at 53–55, 90 S.Ct. at 1576–1577. (Brennan, J., concurring).

Although some courts indulge in the sport of requiring a defendant to show actual prejudice, *see, e. g., State v. Knapp*, 123 Ariz. 402, 599 P.2d 855 (Ariz.App.1979); *Jones v. State*, 595 P.2d 1344 (Okl.Cr.App. 1979), I would agree with that written in *Jones v. Superior Court, supra*, and *Dickey v. Florida, supra*. Where the delay is unreasonable, a defendant should not be saddled with the task of demonstrating actual prejudice.

I do agree with this Court's philosophy that where no attempt is made to demon-

strate any prejudice, that factor should not be given undue weight. Yet nothing in the record before us today indicates in the slightest that the trial court unduly weighted the prejudice factor any more than by observing that "this hindrance could result in nothing but prejudice to the defendant." The trial court sufficiently explained its reasoning, and I find nothing to be gained by now requiring that it be done a second time.

Finally, then, it is necessary to consider whether the trial court incorrectly balanced the pertinent factors. The trial court stated:

> "Considering this matter *ad hoc* and balancing all of the pertinent factors, I find that the defendant has been denied his constitutional right to speedy trial and his motion is well taken."

It is thus obvious that the length of the delay, the reason for the delay and the prejudice to the defendant were all considered, properly weighed, and the state did not prevail. That the decision went against the state ought not to be viewed as grounds for reversal.